# UNITED STATES *v.* MORANT.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR
THE NORTHERN DISTRICT OF FLORIDA.

Argued October 25, 26, 1887. — Decided November 21, 1887.

The testimonio granted to Cerilo de Morant, September 22, 1817, was full and
particular, and both that and the testimonio to Quina, dated May 1,
1818, made complete titles under the Spanish laws.

In Florida a sheriff's deed given in evidence without production of the judg-
ment or execution, and read without objection, is sufficient evidence of
sale by sheriff.

The objection to the claimant's title that no evidence was given of cultiva-
tion, as required by the Spanish grant, is not well founded, as the proof
is conclusive that the grantees built houses and resided on the granted
land shortly after the date of the grants.

Whatever may be the proper construction of the 8th article of the Treaty
of 1819 with Spain as to the necessity of a survey prior to the date when
the obligation to recognize Spanish grants ceased in order to validate a
Spanish grant, the act of June 22, 1860, 12 Stat. 85, under authority of
which this suit was commenced, makes the date of the transfer of pos-
session to the United States, viz., July, 1822, the point from which to
test the validity of the grants.

The act of June 22, 1860, 12 Stat. 85, was passed to give relief to a large
class of grantees of former Spanish governments, whose claims had
been rejected by the different boards of commissioners, and by the
courts, under the strict construction of the treaties required by prior laws.

This case does not come within the proviso in § 3 of the act of June 22,
1860, excluding claims from the jurisdiction of the commission.

There is no reason why a part owner of lands in Florida under a Spanish
grant should not have the benefit of the proceedings authorized by the
act of June 22, 1860, 12 Stat. 85.

The failure to annex a sworn copy of the government surveys to a petition
for confirmation of title filed under the act of June 22, 1860, 12 Stat. 85,
is not a question of jurisdiction, but a matter relating merely to the form
of procedure, which should be objected to when the pleadings are *in fieri*,
and when the petitioners can apply for leave to amend.

The evidence in this case shows that the grants were genuine, and that the
land was surveyed, mapped, and segregated from the public domain in
the spring of 1818.

In affirming the decree below this court merely confirms the validity of the
grant, but does not give a decision which entitles the party to possession
if the government has sold the lands in whole or in part, or if the sur-
veyor general shall ascertain that they cannot be surveyed and located.

THE case is stated in the opinion of the court.

*Mr. Solicitor General* for appellants.

I. The jurisdiction in this case is a special one, granted by the act of June 22, 1860,' 12 Stat. 85, c. 188. The act only authorizes the court to assume jurisdiction when the parties claiming represent title to the whole of the claim. The evidence shows the title to one undivided fourth of the land to be in John Chabaux.

II. There was no sufficient evidence of the genuineness of the grants, and without this they were not admissible without proof, it not appearing that there was thirty years' possession under them.

III. The grants, if genuine, are invalid, and did not warrant the decree of confirmation. See *United States* v. *Clarke*, 8 Pet. 436, and *Smith* v. *United States*, 10 Pet. 326. These cases settled that where an imperfect grant is indescriptive it does not exist as a valid grant to land until it is actually located by survey, and such survey made after the 24th day of January, 1818, under an indescriptive grant, does not validate a grant and should not be confirmed. They also established that a descriptive grant, which by survey after the 24th of January, 1818, is located on other lands than those described in the grant, should not be confirmed as to such grants. Both of the grants presented in this case purport to have been located by survey on the 6th day of March, 1818. The application for the grant by Cerilo de Morant describes the land as "sixteen hundred arpents of said vacant lands, twelve miles to the NW. of this place (Pensacola), on the SE. side of the land established by Mr. Manuel Goverder." The grant is for "the sixteen hundred acres of land that he asks, . . . and that the surveyor general proceed to the measurement and survey, drawing a figurative plan, which, with the proceedings, will be annexed to this matter." Until the same was made on this grant, by its terms no land was "severed from the domain of the king." All that was fixed by it was the locality in which the future severance was to be made by survey.

No monuments were referred to which defined the boundary. Nor was the length of any side given by which the quantity of land might be located; nor was the figure or form of the survey defined. Hence no particular land was granted, but only an executory agreement made that when survey was had the land so surveyed should be granted. See *Lilley* v. *Paschal,* 2 S. & R. 394, 400; *Starr* v. *Bradford,* 2 Penn. (P. & W.) 384, 395; *Lauman* v. *Thomas,* 4 Binney, 51; *Boyes* v. *Kelly,* 10 S. & R. 214.

IV. Specific performance of the alleged grant should not be decreed, on account of laches of the alleged grantees and their privies. The grants, if made, were prior to the 24th of January, 1818. After their making the legal title to the land was transferred to the United States. On the 8th of May, 1822, the United States by statute provided for their confirmation. 3 Stat. 709, c. 129. On the 3d of March, 1823, the presentations of claims was again urged, with penalty of a bar if not presented before the 1st of December, 1823. 3 Stat. 754, c. 29. On the 8th of February, 1827, a similar act was passed limiting the time for filing to the first of November, 1827. 4 Stat. 202, c. 9.

On the 23d of May, 1828, another act was passed which prescribed by its 12th section that all claims not presented within one year should be forever barred. 4 Stat. 286, c. 80, § 12. From time to time thereafter, until the act of 1860, similar legislation was had, which, with the act of 1860, extended the time until 1865. The government was diligent, urgent on the claimants to present claims, giving ample notice, time, and opportunity. The act of 1860, which applied to these claims, by the second section provided that they should be passed upon according to "justice and equity." No possession is shown by the alleged claimants for over forty years. Flagrant laches have existed with reference to the claims. The act of 1860 infused no new life into the claims to be presented, but only removed the bar of prior limitations. No evidence was given to account for or excuse the negligence of the claimants. Courts of equity, acting on their own inherent doctrine of discouraging, for the peace of society, antiquated

demands, refuse to interfere in attempts to establish a stale trust except, where, 1st, the trust is clearly established, 2d, the facts have been fraudulently and successfully concealed by the trustee from the knowledge of the *cestui que trust.* *Badger* v. *Badger,* 2 Wall. 87.

*Mr. Abram Wintersteen* for appellees. *Mr. Wayne McVeagh* filed a brief for same; and *Mr. Robert B. Lines* filed a brief for Laurent Millandon.

Mr. Justice BRADLEY delivered the opinion of the court.

The petition in this case was filed in the District Court of the United States for the Northern District of Florida for the confirmation of a Spanish grant, under the 11th section of the act of June 22d, 1860, entitled "An Act for the final Adjustment of Private Land Claims in the States of Florida, Louisiana and Mississippi, and for other purposes," 12 Stat. 85; and the appeal was taken directly from the decree of the District Court to this court pursuant to the provisions of said section. The petition was filed November 22d, 1869, within the time prescribed by the act of March 2d, 1867, 14 Stat. 544. It is conceded by a stipulation filed of record in the cause that the petitioners are the legal representatives of Cerilo de Morant, Doqumeniel[1] de Morant, and Laurent[1] Millandon, who are deceased. The title of the petitioners is deduced from these deceased parties.

The petition states that on the 8th day of October, 1817, the King of Spain, by Don José Masot, governor of West Florida, granted to Cerilo de Morant, then a subject of Spain, a certain tract of land containing 1600 arpents, situated northwest of Pensacola, in West Florida, about twelve miles and a half, bounded northwardly by lands previously granted to Don Emanuel Gonzales, and by public lands, eastwardly and westwardly by public lands, and southwardly by lands granted to Desiderio Quina; that on the 1st of March, 1818, the said land was surveyed for the grantee by the deputy surveyor for West

---

[1] The varied spelling of the record is followed by the court.

Florida, and that on the 6th of March, 1818, the said deputy surveyor delivered to the proper authorities his certificate and plan of said survey, a copy of which is annexed to the petition. That thereupon the grantee proceeded to clear, occupy, settle and cultivate the land. A copy of the expediente is annexed to the petition.

It then proceeds to state that another grant was made in the same manner on the 20th day of January, 1818, to Desiderio Quina, of 800 arpents of land, situated about eleven miles northwest of Pensacola, and surveyed for the grantee by the same deputy surveyor. The plats annexed show that the two tracts adjoin each other. The petition further states that Quina, on the 29th of October, 1818, sold and conveyed his grant to Cerilo de Morant; and that the latter subsequently sold and conveyed three undivided fourth parts of both tracts to Laurent Millandon, Louis Doqumenil de Morant and John Chabaux, one undivided fourth to each; and that Laurent Millandon afterwards purchased the interest of Chabaux, and thus became owner of one undivided half of the land.

The petition further states that the heirs of Cerilo de Morant petition as well in behalf of the interests of the heirs of Louis Docmeniel de Morant, and those of Laurent Millandon, as for themselves.

On the trial the petitioners produced in evidence their documentary title in Spanish, with English translations accompanying the same. The title of each tract consists of a testimonio in the usual form in such cases. The testimonio of the tract granted to Cerilo de Morant consists of, first, Morant's petition to the governor, for 1600 arpents of land, indicating the locality, and dated September 22, 1817; secondly, the governor's reference to the surveyor general to ascertain if the lands were vacant, and to the fiscal, or attorney general of the royal treasury, for his advice as to the legality and merits of the application; thirdly, the favorable answers of these functionaries; fourthly, an order of the governor that the applicant take the oath required by the fiscal, and that the surveyor general proceed to the measurement and survey of the land, and to annex a figurative plan to his return; fifthly, a certifi-

cate of the oath taken by the applicant; sixthly, the return of
the surveyor, dated March 6, 1818, stating the survey of the
tract in detail, with a plat annexed; seventhly, the governor's
certificate to the testimonio, declaring that it conforms with
the original, and that it is issued at the request of the party at
Pensacola, on the 5th of April, 1818. This testimonio is very
full and particular. The other, issued to Quina, omits a
report from the fiscal, as the petitioner merely stated the
quantity of land desired, and left it to the governor to desig-
nate its location, who referred it to the surveyor general. The
latter located the land adjoining to the tract granted to
Morant. A survey was made accordingly, and a testimonio
issued to the grantee dated the first day of May, 1818.

Both of these testimonios (including the surveys) made com-
plete titles under the Spanish laws.

The petitioners also produced in evidence certain acts of sale
and transfer, to wit:

1. A sale by Quina to Cerilo de Morant for the tract of 800
arpents granted to tl ⌐ former. This act is dated 29th October,
1818.

2. A sale by Cerilo de Morant to John Chabaux, Laurence
Millandon, and Louis Doquminel de Morant, junior, of three
undivided fourth parts of the tract of 800 arpents granted to
Quina. This act of sale is dated November 9th, 1818.

3. A sale by Cerilo de Morant to John Chabaux, Laurence
Millandon and Company, of three undivided fourth parts of
the tract of 1600 arpents, reserving to himself one undivided
fourth part of the same. This act is dated June 14th, 1821.

4. A marshal's deed, dated August 3d, 1835, from James
W. Evans, marshal of the Western District of Florida, to Lau-
rence Millandon, for the one undivided fourth part of both
said tracts which belonged to John Chabaux. This deed
recites a judgment against the executor of John Chabaux
recorded in the Superior Court of the Western District of
Florida, in May Term, 1825, and an execution sued out in
May, 1836, and a sale thereunder by said marshal to said Mil-
landon, in pursuance of which the deed purports to have been
made. The judgment and execution were not produced, but

no objection to the admission of the deed was made on this account; and the practice in Florida as to proof of judicial sales by sheriffs seems to be very liberal. (See *Hartley* v. *Terrell*, 9 Fla. 374, where a sheriff's deed was given in evidence without, so far as appears, the production of the judgment or execution.) The fact that the judgment was against the executor was no objection, since real estate was made assets in the hands of executors by the territorial act of 1833, and equally liable with personal property to an execution upon a judgment against the executor. Act of Feb. 17, 1833, §§ 2, 4; Thompson's Digest, 202, 203.

In 1824, these Spanish titles were presented by Cerilo de Morant to the commissioners for ascertaining claims and titles to land within the district of West Florida, and were rejected by them, on the ground, as appears from their report, that no evidence was given of cultivation as required by the grants. Another reason assigned by the commissioners for rejecting grants in the list containing those in question, was that the claims had not emanated from His Catholic Majesty, or his lawful authorities in West Florida, prior to January 24, 1818, or that the order of survey had not been actually executed anterior to that period. See Commissioners' Report in American State Papers, Public Lands, Vol. IV., pp. 198, 199.

These objections are repeated before us, and are, amongst other things, assigned as grounds of error in the judgment of the court below. They may as well be disposed of here.

As to not cultivating the land, it was proved very conclusively on the trial that the grantees actually built houses and resided upon it shortly after the dates of the grants.

As to the dates of the surveys, it is true that they were both made after the 24th day of January, 1818, namely, in the beginning of March in that year, although the grants were made before that period. The objection is based upon the terms of the treaty entered into with Spain, in 1819, by which Florida was ceded to the United States. By the 8th article of this treaty it was stipulated that all grants of land made before the 24th of January, 1818, by His Catholic Majesty, or by his lawful authorities, in the ceded territories,

should be ratified and confirmed to the persons in possession of the lands, to the same extent that the same grants would be valid if the territories had remained under the dominion of His Catholic Majesty; but all grants made since the 24th of January, 1818, when the first proposal on the part of His Catholic Majesty for the cession of the Floridas was made, were declared and agreed to be null and void.

The commissioners construed these provisions of the treaty as invalidating grants made prior to the date named, if the surveys were not completed until after that date. This construction was opposed by the claimants who were affected by it, and a different view, perhaps, might well have been taken. But, be that as it may, the act of 1860, under which the present proceedings were instituted, made the date of cession to the United States, or the time of transferring possession, the point from which to test the validity of grants. That act was passed for the relief of parties who claimed lands in Florida, Louisiana, or Missouri, "by virtue of grant, concession, order of survey, permission to settle, or other written evidence of title, emanating from any foreign government, bearing date prior to the cession to the United States of the territory out of which said States were formed, or during the period when any such government claimed sovereignty or had the actual possession of the district or territory in which the lands so claimed were situated." (See the act, 12 Stat. 85, §§ 1, 11.) The act of 1860 was intended to give relief to a large class of grantees of former governments, whose claims had been rejected by the different boards of commissioners, and by the courts, under the strict construction of the treaties, which prior laws had required. The history of the question is given at some length in the opinion of this court in the case of *United States v. Lynde*, 11 Wall. 632, and need not be repeated here.

The treaty by which the Floridas were ceded to the United States was not concluded and signed until the 22d day of February, 1819; and the ratifications were not exchanged until two years afterwards. The cession certainly did not take place, therefore, before the date named; and possession

of the territory was not taken until July, 1822; whilst all the acts constituting the titles in question were passed prior to May, 1818. We cannot hesitate to conclude, therefore, that these titles were completed within the time required by the act of 1860.

We will proceed, then, to examine the other errors assigned on behalf of the government.

1. It is contended that the court below had no jurisdiction of the case, (*a*) because the record does not show that the claim did not come within the purview of § 3 of the act of 1860; (*b*) because the alleged claimants do not represent the whole title to the land claimed; (*c*) because no sworn copy of the government surveys was annexed to the petition. The first of these grounds is based on that clause of the 11th section of the act of 1860, which excludes from the jurisdiction of the District Court claims which come within the purview of the 3d section of the act. It requires only a momentary examination of that section to determine that the purview of it here referred to is the *proviso,* which declares, in substance, that in no case shall the commissioners embrace in classes one and two (namely, those which in their opinion ought to be confirmed) any claim previously presented to a board of commissioners, or other public officers acting under authority of Congress, and rejected as being fraudulent, or that had been rejected twice by previous boards. The present case does not come within either of these categories. The other matters assigned as grounds for want of jurisdiction are insufficient. We perceive no reason why a part-owner, or the heirs or representatives of a part-owner, should not have the benefit of the proceeding, even if the present petitioners did not show title to the entire interest in the lands; and the failure to annex a sworn copy of the government surveys to the petition is not a question of jurisdiction, but a matter relating merely to the form of procedure, which should have been objected to when the pleadings were *in fieri,* and the petitioners could have obtained leave to amend. A plat of the two grants, laid down in connection with the sections and subsections of the government surveys, certified as correct by a civil engineer

and surveyor, was put in evidence at the trial without objection, and forms part of the record here. There seems to have been no controversy as to the location of the grants, either before the commissioners in 1824, 'or on the trial of the present cause.

2. The next assignment of error is, that there was no sufficient evidence that the alleged grants were genuine. This assignment cannot be sustained. The original testimonios seem to have been given in evidence at the trial, since the signatures to the same were identified by the witness Francisco Moreno, who had been attached to the public office in Pensacola under the Spanish government as treasurer of the customs and auditor of accounts, and was familiar with this kind of documents. The English translations are certified by the keeper of public archives of West Florida, in whose office both the Spanish originals and the translations of all claims laid before the commissioners of 1824 were recorded in pursuance of the act of March 3, 1825. 4 Stat. 125. It may be added that the genuineness of these titles was not disputed before the said commissioners, and do not seem to have been disputed in this case in the court below, where these titles are familiar to the courts and members of the bar.

3. The last assignment of errors is, that the grants, if genuine, were void. It is contended that they were void, because they were indescriptive grants which had not been surveyed on the 22d day of January, 1818. We have already shown that, although this was the epoch fixed in the treaty for determining the validity of grants, yet that the act of 1860 made the date of cession of the territory, or of yielding possession thereof, the epoch to be observed under that act; and as this latter epoch was certainly as late as the 22d of February, 1819, when the treaty was concluded and signed, the objection falls to the ground. The land was actually surveyed and mapped, and segregated from the public domain in the spring of 1818. The old cases, therefore, which were formerly decided by this court, and which are referred to by the counsel of the government, have no application to the case before us. Prior statutes, inconsistent with the provisions of the act of 1860, no longer control our decision.

We do not think that any of the alleged errors are well founded.

The decree of the District Court is affirmed.

This decision merely confirms the validity of the grants, but does not entitle the parties to possession. If the government has sold the lands in whole or in part, or if the surveyor general shall ascertain that they cannot be surveyed and located, the petitioners, under § 6 of the act of 1860, will be entitled to scrip for other public lands of equal extent, to those so sold, &c.

*Affirmed.*