## UNITED STATES *v.* DALCOUR.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF FLORIDA.

No. 69.   Argued October 30, 31, 1906.—Decided December 3, 1906.

Section 6 of the act of March 3, 1891, 26 Stat. 826, recognizes that there are exceptions other than those enumerated therein in which appeals to this court at that time provided for by law were saved; and this applies to the appeal by the United States under § 11 of the act of June 22, 1860, 12 Stat. 87, from adverse decisions of the District Court of the United States in cases to establish land titles in Florida.

The provision in § 3 of the act of June 22, 1860, that no claims for lands in Florida could be presented to the District Court of the United States that had been theretofore presented before any board of ·commissioners or other public officers acting under authority of Congress and rejected as being fraudulent, *held* to bar a claim which had been presented to a judge of the Superior Court of Florida under the act of May 23, 1828, 4 Stat. 284, and by him refused and rejected on the ground of· an unwarranted alteration of the register of the grant in a particular material to its validity.

THE facts are stated in the opinion.

*The Solicitor General,* and *Mr. Robert A. Howard,* Special Assistant Attorney, for the United States:

This court has jurisdiction. The appeal by the United States to this court is special and mandatory under § 11 of the act of 1860; therefore the Circuit Court of Appeals Act does not apply. This principle is recognized respecting original jurisdiction under the act of August 13, 1888. *Re Hohorst,* 150 U. S. 653, 661. *Gwin* v. *United States,* 184 U. S. 669, distinguished.

If the Circuit Court of Appeals Act applies, the construction of the treaty is really and substantially drawn in question in this case. The petitioners adduced testimony for a grant of January 10, 1818, still in reliance upon the treaty, and not until the final amendment did they repudiate the treaty and rely solely on the act of 1860. *Mitchell* v. *Furman,* 180 U. S. 402, supports the treaty ground of jurisdiction here. It is doubtful if any other than a direct appeal would lie. *American Sugar Refining Co.* v. *New Orleans,* 181 U. S. 277, 281.

As to the statute of limitation, the amendments to the original petition made a different cause of action, which was barred by the limitation of the act of 1860 as extended by the act of 1875. *The Harrisburg,* 199 U. S. 199, 214; *Gray* v. *Trapnall,* 23 Arkansas, 510, 512; *Lytle* v. *State,* 17 Arkansas, 608, 649; *Marstellar* v. *McClean,* 7 Cr. 156; *Bennington* v. *Dinsmore,* 2 Gill (Md.), 348; *United States* v. *Martinez,* 196 U. S. 459; *United States* v. *Heirs of Innerarity,* 19 Wall. 595; *United States* v. *Watkins,* 97 U. S. 219, 223; *Union Pacific R. R. Co.* v. *Wyler,* 158 U. S. 285.

As to the amendment of 1878 adding the Innerarity heirs as parties, the briefs herein reveal an antagonism between the Forbes and Innerarity interests, which certainly imports the introduction of a new cause of action. As to the amendment of 1904, the proper time to make it was after the answer of the United States, setting up the treaty bar and the adjudication of 1830. But they chose to speculate with testimony for the regularity of the grant as of January 10, 1818, and then

faced about squarely with the claim of a grant of February 20. This change came too late. The new declaration is a material and fatal variance. They cannot avail of a document which the United States pleaded and produced for the purpose of showing that a grant of January 10 was impossible, because there was no valid grant at all, in order to maintain the document as a valid grant of February 20.

The claim is barred by the former adjudication under the act of May 23, 1828. The territorial court adjudged this grant in 1830 under laws which discredited claims antedated or forged as well as claims annulled by the treaty (§ 6, act of 1828), and gave the court full power to determine all questions arising (§ 2, act of 1824). That court refused and rejected the claim on grounds going to the validity of the record itself, that is, because the instrument was null and void. In the court's view the grant was not guaranteed by the treaty because it was fundamentally invalid under the law by reason of the alterations. It was not a valid grant before January 24, 1818, because it was not valid at all. The suit of 1830 was in fact a suit ending in a decree between the same parties about the same property, wherein the whole right and all possible rights were litigated. No appeal was taken, and the statute expressly provided that, no appeal being taken, the judgment of the lower court was final and conclusive. The principles laid down by statutes and decisions of this court which are to guide in these cases require a court adjudicating under § 11 of the act of 1860 to regard the principles of the proviso to § 3. A claim previously rejected by an authorized tribunal as fraudulent shall not be confirmed, nor one twice rejected on the merits by previous boards. The commissioners of 1824 disapproved this claim; Congress did not confirm it, which is tantamount to rejection; the territorial court of 1830 rejected it. Judge Brackenridge was a "public officer" acting under authority of Congress" within the proviso of § 3 of the act of 1860, which was evidently framed to cover every examination made by any authorized body. The various statutes

appoint commissioners, registers and receivers, who are frequently called boards of commissioners and courts or judges of courts. These latter are clothed with judicial powers and are the only officers who do not act in the capacity of commissioners. That they are public officers cannot be disputed.

*United States* v. *Baca*, 184 U. S. 653, simply held that grants specially confirmed by acts of Congress were outside the jurisdiction of the Court of Private Land Claims by the terms of the statute. There was no such restriction on the authority of Judge Brackenridge, but he was empowered to adjudicate this case completely, and did. He was right on the merits and as to the Spanish law. Appellees' argument is wholly inconsistent. They say, in effect, that the court ought to accept the unexplained alteration of the registro as regular and official, because in that form only the Spanish authorities certified the document on several occasions; or that the court ought to say that the alteration is to be wholly ignored, the grant saved under the act of 1860 despite the treaty, and the instrument valid without suspicion of fraud. These alternative propositions are fatally antagonistic. The mere antedating of such foreign grants has always lain under condemnation as contrary to the principles of law, justice and equity by which the adjudications are guided, and the strongest presumptions should run against an alteration which antedates, when the change attempts to place the instrument ahead of the absolute bar of an intervening date. *United States* v. *Galbraith*, 2 Bl. 394, cannot be distinguished, as counsel suggest, because there the whole grant was fabricated. There is no distinction. Here the grant was made when the authorities had no power, and was antedated with the same motive and purpose as in the *Galbraith* case.

The act of 1860 does not validate the claim. In the *McMicken case*, 97 U. S. 204, the court said that "claims invalid from intrinsic defects in 1815 or 1825 are not helped by the act of 1860." In the *Lynde case*, 11 Wall. 632, it was declared that the validating effect of the act of 1860 was "sub-

ject, of course, to the express exceptions of the treaty of 1819 and the supplementary declaration of- the King of Spain finally annexed thereto;" and that "if it should appear that a grant was obtained by fraud or was affected by any other special vice,. it would be the duty of the tribunals to reject it." The treaty reservation of the *Lynde case* cannot refer only to the three specifically annulled grants mentioned in the King of Spain's supplementary declaration appended to the treaty, because the language of the opinion is in the conjunctive. The treaty contained the express exceptions, but no specific annulments. Besides other grants than the three named were meant to be annulled, and they were, therefore, within the express exceptions of the treaty. The three grants were not excluded by name, to save the honor of the King, and also because there were other similar grants; "to have named them might have left room for a presumptive inference in favor of others, the determination was to exclude them all." *Arredondo case,* 6 Pet. 755.

The opinion in the *Morant case,* 123 U. S. 335, did not intend to open the door to a grant made after January 24, 1818. It only saves those grants which were initiated before, although not completed by survey until after the treaty limitation. Such a grant as the one in suit, now nearly ninety' years old, stale and rejected, antedated and, therefore, forged because it purports to be what it is not, cannot be confirmed as valid by this court under the treaty or under the act or under any principles of law, equity or justice.

*Mr. William A. Blount,* with whom *Mr. William W. Dewhurst* and *Mr. A. C. Blount, Jr.,* were on the brief, for appellees:

This court is without jurisdiction. *The Paquete Habana,* 173 U. S. 685; *United States v. Rider,* 163 U. S. 132; *Muse v. Arlington Hotel Co.,* 168 U. S. 431; *Gwin v. United States,* 184 U. S. 669; *DeLamar's Nevada v. Nesbitt,* 177 U. S. 523; *New Orleans v. Louisiana,* 105 U. S. 336; *Iowa v. Rood,* 187 U. S. 92; *Sloan v. United States,* 193 U. S. 614.

This court will not review the order reëstablishing the lost files and records, and if it reviews, will not reverse. *Cook* v. *Burnley,* 11 Wall. 672, 676; *Hart's Executor* v. *Smith,* 20 Florida, 63; *United States* v. *Darrington,* 146 U. S. 338; *Farrar* v. *United States,* 3 Pet. 459; *P. W. & B. R. R. Co.* v. *Howard,* 13 How. 307, 332; *Morris's Lessee* v. *Vandreen,* 1 Dall. 65; *Winn* v. *Patterson,* 9 Pet. 677; *Weatherhead's Lessee* v. *Baskerville,* 11 How. 360; *Burton* v. *Driggs,* 20 Wall. 125; *Renner* v. *Bank,* 9 Wheat. 581; *Ruggs* v. *Tayloe,* 9 Wheat. 483; *Rich* v. *Rock Island &c.,* 97 U. S. 694; *Stockbridge* v. *West Stockbridge,* 12 Massachusetts, 400; *Mobley* v. *Walls,* 98 N. Car. 284; *Pruden* v. *Alden,* 34 Am. Dec. 51; *Jackson* v. *Hammond,* 1 Caines Rep. 496; *Tomlinson* v. *Funston,* 1 Green (Iowa), 544; *Lyons* v. *Gregory,* 3 H. & M. 237; *Cook* v. *Wood,* 1 McCord Rep. 139; *Green* v. *Stevens,* 2 Duv. (Ky.) 420; *Jackson* v. *Cullum,* 2 Blackf. (Ind.) 229; *United States* v. *Britton,* 2 Mason, 468; *Goetz* v. *Kochler,* 20 Ill. App. 233; *Harris* v. *McRae's Admr.,* 4 Ired. 81; *Keen* v. *Jordan,* 13 Florida, 335; 2 Phil. Ev., 351 (4th Am. ed.), note 376; Comyns Dig., Evidence A, 3; 1 Green, Evi. § 509.

This court will not review, and if it reviews will not reverse the order permitting the survivor to prosecute the cause for the benefit of all the heirs. *Richmond* v. *Irons,* 121 U. S. 46; *Western Ins. Co.* v. *Eagle Fire Ins. Co.,* 1 Paige, 284; *Verplank* v. *Caines,* 1 John. Ch. 57, and cases cited, p. 59; *F. S. Ry. Co.* v. *Hill,* 40 Florida, 1; *Seymour* v. *Freer,* 8 Wall. 202; 1 Danl. Ch. Pr., 422 (ed. 1865); *Brown* v. *Story,* 2 Paige, 594; *Smith* v. *Swormstedt,* 16 How. 302; *United States* v. *Old Settlers,* 148 U. S. 480; *Osborne* v. *Wisconsin Cent.,* 43 Fed. Rep. 824; *Tilford* v. *Henderson,* 1 A. K. Marshall, 483; *Scrimeger* v. *Bucchanon,* 3 A. K. Marshall, 219; Story's Eq. Pl., 89, 97, 103, 107, 110, 116, 120, 364–367, 831; *Hallett* v. *Hallett,* 2 Paige, 15; *Cutting* v. *Gilbert,* 5 Blatch. 259, 261; Fed. Cas. No. 3,559; approved in *Scott* v. *Donald,* 165 U. S. 116; *Seaman* v. *Slater,* 18 Fed. Rep. 485; *Penhallow* v. *Doane's Admr.,* 3 Dall. 118; *West* v. *Randall,* 2 Mason, 181, 189; *Gainer* v. *Gainer,* 30 W.

Va. 402; *Meux* v. *Wallby*, 2 Swan. 281; *Hale* v. *Hale*, 146 Illinois, 258; *Lilly* v. *Tolbein*, 102 Missouri, 477; Mitford, Chancery Pr., §§ 58, 61, 76, 79, 96, 120, 167; Barton's Suit in Equity, 134; *United States* v. *Morant*, 123 U. S. 335, 339, 343; *Payne* v. *Hook*, 7 Wall. 425, and citations; *West* v. *Randall*, 2 Mas. 181; Fed. Cas. No. 17, 424; *Lockhart* v. *Horn*, 3 Woods, 542; Fed. Cas. No. 8,446; *Wabash &c.* v. *Beers*, 2 Black. 448; *Perry* v. *Jenkins*, 1 Mylne & Craig, 122; *Coit* v. *Campbell*, 82 N. Y. 513; *Gunton* v. *Carroll*, 101 U. S. 426 (25-986); *Deloraine* v. *Brown*, 3 Brown's Ch. Cases, 646; *Brooks* v. *Gibbons*, 4 Paige, 375; *United States* v. *Boisdori*, 11 How. 88; *Barry* v. *Gamble*, 3 How. 57; *United States* v. *Auguisola*, 1 Wall. 352; *United States* v. *Arredondo*, 6 Pet. 746; *Penn Mut. Life Ins. Co.* v. *Austin*, 168 U. S. 685; *Galliher* v. *Cadwell*, 145 U. S. 368; *O'Brien* v. *Wheelock*, 184 U. S. 493; *Nelson* v. *Carrington*, 4 Munf. (Va.) 332, 342 (6 Am. Dec. 524); Wood on Limitations, § 59, p. 119; § 26, pp. 74, 124, 125 (ed. 1883); *Elmendorf* v. *Taylor*, 10 Wheat. 176; *Shorter* v. *Smith*, 56 Alabama, 208; *Rhode Island* v. *Massachusetts*, 15 Pet. 273; *Townsend* v. *Vanderwerker*, 160 U. S. 186; 12 Enc. Law, 533, 558; *The Norway*, 1 Ben. 173; *Pacific R. R.* v. *Ketchum*, 101 U. S. 289; *Ricard* v. *Sears*, 6 A. & E. 469; 11th Eng. Ruling Cases, 78; 2 Pomeroy Eq., § 902; *Coombs* v. *Jordan*, 22 A. D. 274; *Lawrence* v. *Trustees*, 2 Denio, 585; *Pacific Ry.* v. *Mo. Pacific Ry.*, 111 U. S. 505; *Seymour* v. *Freer*, 8 Wall. 202; *Waddell* v. *United States*, 25 C. C. A. 323; *Sprujer* v. *Sprujer*, 114 Illinois, 553; *Jackson* v. *Horton*, 126 Illinois, 569; *Callender* v. *Colegrove*, 17 Connecticut, 1; *Terry* v. *Sharon*, 131 U. S. 40; *Fretz* v. *Stover*, 89 U. S. 198; *Bettes* v. *Dana*, 2 Sum. 383; Fed. Cas. No. 1,368; *Mason* v. *Hartford &c. Ry.*, 19 Fed. Rep. 56; *Newcombe* v. *Murray*, 77 Fed. Rep. 493; *Wilson* v. *Codman's Extr.*, 3 Cranch, 207; *Pendleton* v. *Fay*, 3 Paige, 204; 2 Danl. Ch. Pr., 1624 (3d Am. ed. 1865); p. 1491, note 2, and § 1509 (6th Am. ed.).

The court did not err in its order striking out the plea of defendant to the bill of revivor, and this court will not review the correctness of the order. *Sharon* v. *Terry*, 36 Fed. Rep.

346; *Fretz* v. *Stover*, 22 Wall. 198; *Slack* v. *Walcott*, 3 Mason, 508; Fed. Cas. 12,932; *Bettes* v. *Dana*, 2 Sum. 383; Fed. Cas. No. 1,368; 2 Barb., Ch. Pr., 52; *Milligan*.v. *Milleage*, 3 Cranch, 220; *Piatt* v. *Oliver*, 1 McLean, 295; Fed. Cas. No. 11,114; Story, Eq. Pl., § 693, note 4 (ed. 1870).

The court did not err in permitting the heirs of James Innerarity and John Innerarity to be formally made parties, and this court will not, review the order. *Credit's Com. Co.* v. *United States*, 175 U. S. 117; *Chapman* v. *Barney*, 129 U. S. 677.; *Robertson* v. *Baker & Macrae*, 11 Florida, 192; *United States* v. *Delespine*, 15 Pet. 326; *Egberts* v. *Wood*, 24 Am. Dec. 238; *Hunter* v. *United States*, 5 Pet. 173, 182; *Hall* v. *Fisher*, 3 Barb. Ch. 637; *Tildesley* v. *Harper*, 10 Ch. Div. 393; 2 English Ruling Cases, 780; *Lewis* ·v. *Darling*, 16 How. 1, 8; *United States* v. *Watkins' Heirs*, 97 U. S. 219; *United States* v. *Innerarity*, 19 Wall. 595; *United States* v. *Sutter*, 21 How. 170; *McMicken* v. *United States*, 97 U. S. 204; *United States* v. *Morant*, 123 U. S. 343; *Castro* v. *Hendricks*, 23 How. 438; *Brown* v. *Brackett*, 21 Wall. 387; *Buyck* v. *United States*, 15 Pet. 215; *Seymour* v. *Freer*, 3 Wall. 202; *Cross* v. *Sabin*, 13 Fed. Rep. 308; *Moreau* v. *Saffarans*, 3 Sneed, 595; 1 Wash. Real· Prop., 574; 3 Wash. Real Prop., 241 (ed. 1868); *Van Vetchen* v. *Terry*, 2 John Ch. 197; *Hopkirk* v. *Page*, 2 Brock, 20; Fed. Cas. No. 6,697.; *Mitchell* v. *United States*, 9 Pet. 733; *Ely* v. *United States*, 171 U. S. 220; *United States* v. *Kingsley*, 12 Pet. 485; *United States* v. *Hanson*, 16 Pet. 196; *United States* v. *Forbes*, 15 Pet. 182; *United States* v. *Mitchell*, 15 Pet. 89; *Henshaw* v. *Bissell*, 18 Wall. 255; *United States* v. *Fossatt*, 21 How. 446; *United States* v. *White*, 23 How. 249; *Doe* v. *MacFarland*, 9 Cranch, 153; *United States* v. *King*, 7 How. 893; *Scull* v. *United States*, 98 U. S. 410; *Poole* v. *Fleeger*, 11 Pet. 185; *Moody* v. *Johnson*, 112 N. Car. 546; *Newman* v. *Virginia &c.*, 80 Fed. Rep. 228; *Pierson* v. *Grice*, 6 La. Ann. 232; *The Beaconsfield*, 150 U. S. 312; *United States* v. *Heirs of Clarke and Atkinson*, 16 Pet. 228; *Becnel* v. *Wagnespack*, 40 La. Ann. 109; *Foote* v. *O'Roork*, 59 Texas, 215; *Wyman* v.

*Wilcox's Estate,* 63 Vermont, 487; *Vunk* v. *Raritan &c.,* 56 N. J. Law, 395; *Guild* v. *Parker,* 43 N. J. Law, 43; *Dixon* v. *Dixon,* 19 Iowa, 512; *United States Ins. Co.* v. *Ludwig,* 108 Illinois, 514, 518; *McCall* v. *Lee,* 120 Illinois, 261; *S. C.,* 11 N. E. Rep. 522; *Winston* v. *Mitchell,* 93 Alabama, 554, 559; *Lyon* v. *Tallmadge,* 1 John Ch. 184; *Hardin* v. *Boyd,* 113 U. S. 756; *Union Pac. Ry.* v. *Wyler,* 158 U. S. 287; *French* v. *Hay,* 22 Wall. 238; *Neale* v. *Neales,* 76 U. S. 1; 9 Wall. 1; *Tremaine* v. *Hitchcock,* 90 U. S. 518; *Bray* v. *Creedmore,* 109 N. Car. 49; *Lilly* v. *Tobbein,* 103 Missouri, 477; *S. C.,* 23 Am. St. Rep. 887; *Penn. Co.* v. *Sloane,* 24 Ill. App. 48; *S. C.,* 125 Illinois, 72; *Sublett* v. *Hodges,* 88 Alabama, 491; Wood on Lim., 294; 1 Danl. Ch. Pr., § 402; Story, Eq. Pl., § 332; Rule 28, Eq. Rules; *Davis* v. *N. Y. R. R. Co.,* 160 N. Y. 646; *Scovill* v. *Glassner,* 79 Missouri, 449; *Texas & Pacific Ry. Co.* v. *Cox,* 145 U. S. 593; *Gormley* v. *Bunyan,* 138 U. S. 623; *McDonald* v. *Nebraska,* 101 Fed. Rep. (C. C. A.) 178.

This court will not review the order permitting the amendment relying upon the grant of February 20, 1818, instead of January 10, 1818, and if it reviews, will affirm the order. *Clements* v. *Moore,* 6 Wall. 310, 311; *Cook* v. *Barr,* 44 N. Y. 158; *Kennard* v. *Withrow* (Ct. Civ. Appeals Texas), 28 S. W. Rep. 226; *Commissioners* v. *Keene &c.,* 108 Fed. Rep. 505, 515; *Cannell* v. *Milburn,* 3 Cr. C. C. 424; Fed. Cas. No. 2,384; *Nash* v. *Towne,* 5 Wall. 689, 698; *Moses* v. *United States,* 166 U. S. 580; *United States* v. *King,* 7 How. 887, 888; *McMicken* v. *United States,* 97 U. S. 210; *United States* v. *Turner,* 11 How. 665, 668; *United States* v. *Wiggins,* 14 Pet. 346; *United States* v. *Percheman,* 7 Pet. 85; *United States* v. *Delespine,* 12 Pet. 655; *United States* v. *Mitchell,* 9 Pet. 732; *Gonzales* v. *Ross,* 120 U. S. 605; 2 Manuel del Abogado Americano, 62, Title 13, de las pruebas; 1 White's Recopilacion, 297; *Owings* v. *Hull,* 9 Pet. 625; *United States* v. *Sutter,* 21 How. 170; *United States* v. *Davenport's Heirs,* 15 How. 7; *United States* v. *Hanson,* 19 Pet. 200, 241; *United States* v. *Wiggins,* 14 Pet. 346; *United States* v. *Boisdore,* 11 How. 97; *United States* v. *Percheman,* 7

Pet. 51; *United States* v. *Delespine,* 15 Pet. 319, and cases cited; *Page's case,* 5 Coke, 74; *Patterson* v. *Winn,* 5 Pet. 241; *Moses* v. *United States,* 166 U. S. 578; *Washington* v. *Hickley,* 166 U. S. 521, 532; *Dunstan* v. *Kirkland,* 3 Hughes, 641; Fed. Cas. No. 4,181; *Roberts* v. *Graham,* 6 Wall. 578; *Salt Lake City* v. *Smith,* 104 Fed. Rep. 458; cases cited 163 U. S. 477; *Blackwell* v. *Patton,* 7 Cr. 471; *Scull* v. *United States,* 98 U. S. 410; *Hallford* v. *Blanchford,* 2 Sanf. Chancery, 152; *Every* v. *Merwin,* 6 Cow. 366, 367; *McDonald* v. *State,* 101 Fed. Rep. 171, 176; *Oteri* v. *Scalzo,* 145 U. S. 589; *Jones* v. *Van Doren,* 130 U. S. 684, 692; *Hopkins* v. *Grimshaw,* 165 U. S. 358; *Allen* v. *Woodruff,* 96 Illinois, 11; *Ridgely* v. *Bond,* 18 Maryland, 433; *Filler* v. *Tyler,* 91 Virginia, 458; *Dodge* v. *Evans,* 43 Mississippi, 570; *Bartee* v. *Tompkins,* 36 Tennessee, 623; *Kelly's Heirs* v. *McGuire,* 15 Arkansas, 555; *Jenkins* v. *Collard,* 145 U. S. 560, 561; *Jones* v. *United States,* 137 U. S. 202, 212, 215; *United States* v. *Reynes,* 9 How. 147, 148; 1 Chitty on Pleading (16 Am. ed.), 237; *Clarke* v. *Village &c.,* 88 Michigan, 308; *Chicago &c.* v. *Porter,* 72 Iowa, 426; *Yontz* v. *United States,* 23 How. 495; *Landes* v. *Brant,* 10 How. 372; *North Chicago* v. *Monka,* 107 Illinois, 343; *Bogardus* v. *Trinity Church,* 4 Paige Ch. 197; *Railroad Co.* v. *Nix,* 68 Georgia, 572.

The captain general had authority to make the grant to John Forbes & Company. *United States* v. *Clarke,* 8 Pet. 452; *Chouteau* v. *Eckhart,* 2 How. 374; *United States* v. *The Mayor &c.,* 11 How. 660; *United States* v. *Turner,* 11 How. 665; *Smith* v. *United States,* 10 Pet. 332; *Arredondo* v. *United States,* 6 Pet. 711; *Keen* v. *McDonough,* 8 Pet. 310; *Glenn* v. *United States,* 13 How. 261; *United States* v. *Acosta,* 1 How. 26; *United States* v. *Segui,* 10 Pet. 306; *United States* v. *Hanson,* 16 Pet. 199.

The decree of Judge H. M. Brackenridge is not *res adjudicata* as against this claim. *United States* v. *Clarke,* 8 Pet. 467; *Smith* v. *United States,* 10 Pet. 321; *United States* v. *Wiggins,* 14 Pet. 350; *Ely* v. *United States,* 171 U. S. 224; *United States* v. *Arredondo,* 6 Pet. 711; *United States* v. *Curry,* 6 How. 112;

*Moore* v. *Albany,* 98 N. Y. 408; *United States* v. *Baca,* 184 U. S. 653; *So. Pac. Ry.* v. *United States,* 168 U. S. 49; *De-Chambrun* v. *Schermerhorn,* 59 Fed. Rep. 508; *Utter* v. *Frank-lin,* 172 U S. 424; *Cromwell* v. *Sac County,* 94 U. S. 351; *Norton* v. *Huxley,* 13 Gray, 290; *Merriam* v. *Whittemore,* 5 Gray, 317; *Dauterive* v. *United States,* 101 U. S. 700; *United States* v. *Morant,* 123 U. S. 342; *United States* v. *Lynde,* 11 Wall. 632.

The alteration of the dates of the grant does not preclude recovery thereon. *United States* v. *King,* 7 How. 890; *United States* v. *Perchman,* 7 Pet. 51; 1 Green, Evi., § 566, cases cited note 1; *Henfée* v. *Bromley,* 6 East, 309; *S. C.,* 2 Smith, 400; *Speake* v. *United States,* 9 Cranch, 37; 6 Pet. 722; 9 How. 167, 663; 17 How. 442, 557; 98 U. S. 428; Escriche's Dictionary of Jurisprudence, 888; Jacob's Law Dictionary, vol. 5, p. 398 (ed. 1811); 2 Enc. Law, 265 (2d ed.); 1 Taylor on Evidence, § 164; *Malin* v. *Malin,* 1 Wend. 625, 659; 2 Enc. Law, 268; *Doane* v. *Hadlock,* 42 Maine, 72; *United States* v. *Linn,* 1 How. 104, 113; *United States* v. *Marshall Silver Mining Co.,* 129 U. S. 579, 589; *United States* v. *Stinson,* 197 U. S. 204; *United States* v. *King,* 3 How. 786; *United States* v. *Bernal,* 1 Hoffman's Repts. 62; *Stringer* v. *Young,* 3 Pet. 341; *Mitchell* v. *United States,* 9 Pet. 732; *United States* v. *Wiggins,* 14 Pet. 345; *United States* v. *Galbraith,* 2 Black, 394; *Friedman* v. *Shamblin,* 117 Alabama, 454; *United States* v. *Hatch,* 1 Paine, 336; *DeVoy* v. *The Mayor,* 35 Barb. 264; *People* v. *Minck,* 21 N. Y. 539; *Casoni* v. *Jerome,* 58 N. Y. 321; see 1 Executive Papers, Sess. 16 Cong., Doc. 2, p. 25; see Letter Sec. State, Doc. 274, 1 Sess. 22 Cong., p. 12; *Hornsby* v. *United States,* 10 Wall. 224; *Speake* v. *United States,* 9 Cranch, 28; *Gonzales* v. *Ross,* 120 U. S. 605; *Penny* v. *Corwithe,* 18 John, 501; *Prouty* v. *Wilson,* 123 Massachusetts, 297; *Stewart* v. *Port Huron,* 40 Michigan, 348; *Mallory* v. *Stodder,* 6 Alabama, 861; *Lewis* v. *Payn,* 8 Cow. 71; *Morgan* v. *Elam,* 4 Yerger, 411; 2 Am. & Eng. Enc. of Law, 2d ed., 196, 204; *Doe* v. *Hurst,* 3 Starkie, 60; *S. C.,* E. C. L. 162; *Woods* v. *Hilderbrand,* 46 Missouri, 284;

1 Greenleaf, Evi., § 568; *Jackson* v. *Chase,* 2 John, 84, 87; *Hatch* v. *Hatch,* 9 Massachusetts, 307; *Dana* v. *Newhall,* 13 Massachusetts, 498; *S. C.,* 138 U. S. 21; *Alabama State* v. *Thompson,* 104 Alabama, 570; *Insurance Co.* v. *Fitzgerald,* 16 Q. B. 450; *Davison* v. *Cooper,* 11 M. & W. 778, 800; *Burnett* v. *McCluey,* 78 Missouri, 676; *Chessman* v. *Whittemore,* 23 Pick. 231; 10 Wall. 36; 2 Ed. Smith L. C. 1; 1 Whart., Evi., 629; 158 U. S. 27; *Jackson* v. *Gould,* 7 Wend. 364; *North* v. *Henneberry,* 44 Wisconsin, 306; *Alexander* v. *Hickox,* 34 Missouri, 496; *Patterson* v. *McClay,* L. R. 10 Ex. 360; *Ward* v. *Wesley,* 5 H. & N. 87; *Hutchins* v. *Scott,* 2 M. & W. 815; *Sutton* v. *Toome,* B. & C. 16; *S. C.,* 14 E. C. L. 66; *Herrick* v. *Malin,* 22 Wend. 388; 1 Ex. Papers, 1 Session, 16 Congress, Doc. No. 2, p. 34, read in Congress Dec. 7, 1819; *Marbury* v. *Madison,* 1 Cranch, 137; *Lott* v. *Proudhomme,* 3 Rob. La. 293; *Lavergne's Heirs* v. *Elkins' Heirs,* 17 Louisiana, 226; *Donner* v. *Palmer,* 31 California, 513; *Pinkerton* v. *Ledroux,* 119 U. S. 254; *United States* v. *Clark,* 8 Pet. 436, 468; *United States* v. *Schurz,* 102 U. S. 378; *LeRoy* v. *Jamison,* 3 Sawy. 369; Fed. Cas. No. 8,271; *Testimony of Carlos Evans,* 4 Am. State Papers, 172; 2 White's Recopilacion, 256; *United States* v. *West,* 22 How. 315; Law 6, Title 5, Partida 5; Law 4, Title 4, Partida 4; Law 2, Title 11, Partida 5; 1 Sala Illustracion Derecho Real, 271; 2 Tapias Febrero Novissimo, § 3, 134 (Paris ed., 1855); *Long* v. *Dollarhide Co.,* 24 California, 218; *Strother* v. *Lucas,* 12 Peters, 450.

No right of Indian occupancy at the time of the grant prevents it from being valid. *United States* v. *Fernandez,* 10 Pet. 303; *Mitchell* v. *United States,* 9 Pet. 711; *Fletcher* v. *Peck,* 6 Cranch, 143; Reports of Coms., 4 Am. St. Papers, 93 (Duff Green ed.); 2 White's Recopilacion, 324.

The act of 1860 repealed the time limit fixed in the treaty of February 22, 1819. *Headmoney cases,* 112 U. S. 580; *Whitney* v. *Robertson,* 124 U. S. 190, 196; *S. C.,* 143 U. S. 570; *S. C.,* 130 U. S. 581; *United States* v. *Scull,* 98 U. S. 410; *United States* v. *Morant,* 123 U. S. 335; *United States* v. *Clamorgan,* 101 U. S. 822; *United States* v. *Repentigny,* 5 Wall. 211; *United*

*States* v. *D'Auterive*, 10 How. 609; *United States* v. *Phila. and New Orleans S. S. Co.*, 11 How. 609; *Montault* v. *United States*, 12 How. 47; *United States* v. *Castant*, 12 How. 437; 2 Pet. 317; 12 Pet. 516; 9 How. 151; *United States* v. *Lynde*, 11 Wall. 632; *McMicken* v. *United States*, 97 U. S. 204; *United States* v. *Watkins*, 97 U. S. 219.

This grant has not been rejected because of fraud by any public officer acting under authority of Congress. *United States* v. *Scull*, 98 U. S. 410; *United States* v. *Morant*, 123 U. S. 325. See § 3, act of March 3, 1823, 3 Stat. 757; § 6, act of March 3, 1825, 4 Stat. 126; *United States* v. *Baca*, 184 U. S. 63.

*Mr. Henry R. Hatfield* for heirs of John Forbes, appellees.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a petition to establish title by a grant of about one million eight hundred and fifty thousand acres of land in Florida, brought in the District Court under the act of June 22, 1860, c. 188, § 11, 12 Stat, 85, 87, extended by act of June 10, 1872, c. 421, 17 Stat. 378, for three years from the last date. The petitioners had a decree in the District Court, and the United States appealed to this court under the above-mentioned § 11.

As the jurisdiction of this court is denied, we will dispose of that question before going farther into the facts. The ground of the denial is that by § 6 of the act of March 3, 1891, c. 517, 26 Stat. 826, the Circuit Court of Appeals shall exercise appellate jurisdiction to review final decisions in the District Courts, etc., in all cases other than those provided for in the preceding section, "unless otherwise provided by law." There is no doubt that this enactment was intended to supersede previous general provisions, and to establish in what cases and to what courts appeals might be taken from the District Courts. *The Paquete Habana*, 175 U. S. 677, 686. But the statute recognizes, in addition to the exceptions which it enumerates, others

where it is "otherwise provided by law." These words must be taken to refer to existing provisions and not to be merely a futile permission to future legislatures to make a change. They do not save every existing provision, of course, or the act would fail of its purpose. But they save some. There is no case to which they can apply more clearly than one in which, by reason of its interest, the United States has mani- fested its will to submit to no judgment not sanctioned by its highest court. The language of § 11 is not the usual permis- sion to appeal, such as existed in the act of March 3, 1851, c. 41, §§ 9, 10, 9 Stat. 632, 633, referred to in *Gwin* v. *United States*, 184 U. S. 669. See also act of August 31, 1852, c. 108, § 12, 10 Stat. 99. It bears the unusual form of a positive re- quirement. "If the decree be against the United States, an appeal shall be entered to the Supreme Court of the United States." This is a provision based on a specific policy with regard to a certain class of claims. It is not a matter of gen- eral principle but a special trust. See also act of May 23, 1828, c. 70; § 9, 4 Stat. 284, 286, May 26, 1824, c. 173, § 9, 4 Stat. 52, 55. It stands on the same ground of peculiar im- portance that is the foundation of the express grant of certain direct appeals in § 5 of the act of 1891. Therefore, without considering whether the case at bar falls within the other exceptions, we are of opinion that the jurisdiction of this court given by § 11 of the act of 1860 remains unchanged.

The petition was filed on March 3, 1875, by the heirs of John Forbes. It alleged a grant to John Forbes by the Captain General of Cuba, on January 10, 1818, that is, a grant made in time to escape the eighth article of the treaty with Spain, of February 22, 1819, declaring all such grants made after January 24, 1818, void. On the other hand, it invoked the earlier part of the same article, by which all grants made by the King of Spain or by his lawful authorities, in the territories ceded to the United States, before January 24 were to be confirmed to the same extent as if the territories had not been sold. On December 14, 1878, an amendment was allowed,

by which the grant was alleged to have been made to John
Forbes and Company, a partnership consisting of Forbes,
James Innerarity and John Innerarity, and the Innerarity
heirs were joined as parties. The rights of the United States,
especially under the statute of limitations, were saved, and
one question argued is whether this amendment could be al-
lowed, when the time for bringing suit under the act of 1860
had expired. We shall not find it necessary to discuss this
question, and shall assume for the purposes of decision that
the amendment properly was allowed. *United States* v. *Morant*,
123 U. S. 335, 343. We shall assume that the proceeding is
to establish the claim and appropriate the land to it, rather
than to determine in detail the present holders of the claim.
See *Butler* v. *Goreley*, 146 U. S. 308, 309, 310; *S. C.*, 147 Massa-
chusetts, 8, 12; *Pam-To-Pee* v. *United States*, 187 U. S. 371,
379, 380.

It is unnecessary to trace all the vicissitudes of the case or
to explain the delays. It is enough for our purposes to say
that the parties reached an issue on May 29, 1903. A master
was appointed and testimony was taken. At the hearing
before him the United States put in the registro, or instru-
ment of grant, which was in fact the original instrument,
although the document of title under Spanish law is a copy
delivered to the grantee, while the registro is retained by the
Government. It appeared upon inspection that this instru-
ment had been altered in the date to January 10, from Febru-
ary 20, 1818, the true date making the grant void under the
treaty. Thereupon the petitioners asked leave to amend by
adding an allegation that the grant was made on February 20,
1818, but had been altered so that it purported to have been
made on January 10. The result of this amendment was that
whereas the ground of recovery previously had been the treaty,
now it was that the act of 1860 had given a right to recover
in a case which the treaty put an end to in so many words.
It abandoned the old ground, and that no longer could be
relied upon if the amendment was allowed. The amendment,

although filed, was not formally allowed before the hearing, and after the hearing the United States filed a suggestion that it had been treated as allowed and that an order should be made *nunc pro tunc* that the amendment had been allowed. Thereupon the order suggested was made, and an additional answer was filed setting up the treaty and the limitation in the statutes. We do not perceive that the United States, by its course, lost its right to maintain that the amendment set up a new cause of action which was barred by the limitation fixed by the statutes on the matter, and it urges that defense. *Union Pacific Ry. Co.* v. *Wyler,* 158 U. S. 285, 298.

It has been decided that a decree upon a bill to have a patent declared void as forfeited under an act of Congress was a bar to a subsequent bill for the same purpose upon the different ground that the land was excepted from the grant as an Indian reservation. *United States* v. *California & Oregon Land Co.,* 192 U. S. 355. In that case it was intimated that in general a judgment is a bar to a second attempt to reach the same result by a different *medium concludendi.* But while such a decision might be persuasive on the question whether the cause of action is the same or different for the purposes of amendment, it has been decided that an amendment could not be allowed in a Missouri district, changing the ground of recovery from the common law to the common law as modified by a Kansas statute, which did away with the defense that the negligence complained of was that of a fellow servant, in actions against railroads. *Union Pacific Ry. Co.* v. *Wyler,* 158 U. S. 285. In the present case the change is a change in the allegations of fact, and was most material, because it necessarily was followed by a direct facing about with regard to the law. We shall not dispose of the case on this ground, but we think it proper to say that the difficulties in the way of upholding this amendment under the last mentioned decision have not been removed from our minds.

The fundamental questions in the case are whether the petitioners are within the act of 1860, and if they are, whether

they are not met by an exception to which we shortly shall refer. The former we shall not decide. The statute by § 1 gave a petition to any persons "who claim any lands lying within the States of Florida, Louisiana, or Missouri, by virtue of grant `. . . emanating from any foreign government, bearing date prior to the cession to the United States of the territory out of which said States were formed, or during the period when any such government claimed sovereignty or had the actual possession of the district or territory in which the lands so claimed are situated." And somewhat similar language is used in § 11, allowing a proceeding in the District Court. There, however, the words apply only in case of a complete grant or concession and separation from the mass of the public domain prior to the cession to the United States, "or where such title was created and perfected during the period while the foreign governments from which it emanated claimed sovereignty over or had the actual possession of such territory.".

The petitioners rely upon the words of the act and upon *United States* v. *Morant*, 123 U. S. 335. That case involved lands in Florida, lying like the present east of the river Perdido, of which the grant was made before January 24, 1818; but the survey was not completed until afterwards. The court, while intimating that such a grant well might have been held to be saved by the treaty, pointed out that the treaty was not signed until February 22, 1819, or possession taken until July, 1822, and held that the case was within the act.

On the other hand, there must be, and it has been intimated that there are, some limits to the generality of the words of the statute. Certain large grants were expressly excepted from recognition by the King of Spain on his ratification of the treaty. The act was not intended to bring them to life. There is a strong argument that it no more was intended to validate all other grants expressly annulled, but rather that what was aimed at was the so-called disputed territory lying west of the river Perdido, of which a short and clear account

is to be found in *United States v. Lynde*, 11 Wall. 632. In the light of that history and in view of the alternative ground of decision kept open in *United States* v. *Morant*, if there are no other possible distinctions between that case and this, we also shall leave it open whether the intimation in that case is right, or whether the same Justice was more accurate when he said, even with regard to grants of land in the disputed territory, that the intention of the act was to validate them, "subject, of course, to the express exceptions of the treaty of 1819 and the supplementary declaration of the King of Spain finally annexed thereto." *United States* v. *Lynde*, 11 Wall. 632, 646, 647. See *McMicken* v. *United States*, 97 U. S. 204, 208, 209; *United States* v. *Clamorgan*, 101 U. S. 822, 825, 826, ("which passed by the Louisiana purchase" in 25 Lawy. Ed. 836).

However it may be as to the question upon which we have touched, we are of opinion that this case "comes within the purview of the third section of this act" (of 1860) in the words of § 11, in which event the petition is not allowed to be maintained. The third section provides for a division of the claims into three classes, numbers one and two containing claims which ought to be confirmed, number three containing those which ought to be rejected, "*Provided*, That in no case shall such commissioners embrace in said classes *number one* and *number two* any claim which has been heretofore presented for confirmation before any board of commissioners, or other public officers acting under authority of Congress, and rejected as being fraudulent, or procured or maintained by fraudulent or improper means." We are of opinion that this proviso excludes the petitioners, for the reasons which we proceed to state.

Before the act of 1860 was passed, an act of May 23, 1828, c. 70, § 6, 4 Stat. 284, 285, authorized the presentation of certain land claims in Florida to a judge of the Superior Court of West Florida, subject to the restrictions of the act of May 26, 1824, c. 173, 4 Stat 52. This claim was presented by the Innerarities for themselves and the Forbes heirs, and after a

trial the prayer for confirmation of the title was "refused and rejected" for the reasons set forth in an opinion which is in the record before us. The general ground was the unwarranted alteration of the registro, which we have mentioned above. The judge was careful not to implicate the public officer, remarking that it would be unjust when he was not a party and had no opportunity of defense. He also stated that it was not intended to implicate the parties in interest. But he pointed out that the inducement for an alteration of the registro a year or two after it was made, when the time became essential, in consequence of the treaty, was obvious, and as plainly intimated that he considered the alteration fraudulent, as he could without saying so in words. He simply avoided finding by whom the alteration was made. He quoted the Curia Filipica for the invalidity of a public instrument which does not authenticate alterations by a salvado; and he concluded that the claimants had no legal grant prior to January 24, 1818. He relied upon the absence of a salvado, no doubt, but only as one of the grounds for deciding that the alterations were made without authority of law, and as leading to the further consequence that the instrument was void.

The United States set up this adjudication as a bar under the above-mentioned § 3. The petitioners make several replies. In the first place they contend that if a decision by a judge had been embraced within the proviso of § 3, he would not have been referred to in a slight, subordinate and alternative way, under the general head of "other public officers acting under authority of Congress," after the specific mention of "any board of commissioners." The reason seems plain enough, however. The whole scheme of the earlier acts was that the claims should be presented to a board of commissioners. Act of May 8, 1822, c. 129, 3 Stat. 709; March 3, 1823, c. 29, 3 Stat. 754; February 8, 1827, c. 9, 4 Stat. 202. The right to present a claim to a judge came in only by way of a late supplement in a limited number of cases. Act of May 23, 1828, c. 70, § 6, 4 Stat. 284, 285. The judges referred

to were judges of a territorial court, established by the acts of March 30, 1822, c. 13, § 6, 3 Stat. 654, and March 3, 1823, c. 28, § 7, 3 Stat. 750. They were not District Judges, and there was a certain ambiguity in their standing which was under discussion when the act of 1828 was passed and has been discussed since. *American Ins. Co.* v. *356 Bales of Cotton,* 1 Peters, 511; *McAllister* v. *United States,* 141 U. S. 174. It was most natural to use cautious words, but there was no other public officer which the act of 1860 is likely to have had in mind. No further argument seems necessary to justify the conclusion that these judges were embraced within the actual as well as the literal meaning of the words used.

In the next place, it is said the claim was not found to be fraudulent or maintained by fraudulent or improper means. With regard to this we think that we have said enough already. The claim was found to be based upon an alteration, the motive for which was pointed out, and to be maintained by a reliance upon the unlawful alteration. The main contention is that the judge had no jurisdiction to reject the claim on that ground because, the moment that he decided the true date of the grant to be after January 24, he fell within a proviso of the act of May 23, 1828, c. 70, § 6, 4 Stat. 285, which excluded him from taking cognizance of any claims annulled by the treaty. *United States* v. *Baca,* 184 U. S. 653. It appears to us that this argument rests on too narrow a view of the statutes and of what was done. The claim as presented was within the judge's jurisdiction. He had authority to inquire whether it was so in fact. The document produced by the petitioner showed a claim which he could decide upon the merits, for the copy did not disclose the alteration. When the registro was put in it appeared that the date had been altered. He still had authority to decide whether the alteration was valid. He decided that it was unlawfully and fraudulently made. It would be an extraordinary refinement to say that he had authority to decide that it was made unlawfully but not to decide why it was unlawful. The illegality did not

follow from the mere fact of alteration. Had there been a salvado it might have been valid. He could not come to his conclusion without some definite ground.

Moreover, while it is true that the limitation in § 6 of the act of 1828 in form provides that the act shall not be taken to authorize the judge to take cognizance of any claim annulled by the treaty, etc., in substance it is addressed to maintaining the invalidity of the excluded claims. The jurisdiction of the judge was no different from what it would have been if the proviso had declared that nothing in the act should be taken to validate or to authorize the recognition of any claim which the treaty declared void. We are of opinion that the judge had authority to find the claim to be fraudulent and maintained by improper means.

The decree "rejected" the claim upon the grounds which we have stated, and an opinion was expressed that the grant was not merely annulled by the treaty, but void under Spanish law. But the objection remains to be answered that even if "reject" was a proper term for the decree in such a case, and even if the jurisdiction to reject included authority to find that the claim had been saved from the treaty by fraud, still there was no jurisdiction to pass upon its validity apart from the treaty, and that, therefore, the claim now may be set up since the act of 1860 has brought it to life. The proviso in § 3 of the act of 1860, it may be said, refers to claims rejected on their merits, when all the merits as admitted by that act were open. We are of opinion that there is no reason for thus artificially narrowing words that on their face include all cases. They include as well any claim which previously had been rejected as fraudulent or maintained by improper means, when the fraud addressed itself to avoiding the treaty, as when it related to some other fact material to the validity of the claim at the time when it was created. The fraud went to the merits of the case. For by the meaning of the act of 1828, as just explained, the date of the grant was as material to the validity of the claim as the authority of the Captain General

of Cuba to convey on behalf of the King.   Therefore it is our opinion that the claim is barred by the decree, even if it could escape from the other objections upon which we have found it unnecessary to pass.

*Decree reversed.*