### J. T. RENN v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 17 November, 1915.)

1. **Master and Servant—Federal Employers' Liability Act—Exclusive Provisions—State Court.**

   The Federal Employers' Liability Act supersedes and is exclusive of the State statutes upon the same subject-matter.

2. **Master and Servant—Federal Employer's Liability Act—Pleadings—Amendments—State Courts.**

   An amendment to the complaint in an action brought in the State court under the provisions of the Federal Employers' Liability Act so as to allege a cause of action thereunder, presents a matter of pleading and practice which the Federal courts will not review.

### 3. Pleadings—Proof—Variance—Interpretation of Statutes.

A variance between the pleadings and proof will not be regarded as material unless it misleads the complaining party to his prejudice in maintaining his action upon its merits (Revisal, sec. 495); and where the complaint is objected to on the ground that it does not state a cause of action the objection will not be sustained if, as appearing therefrom, the facts alleged are sufficient for that purpose, when liberally construed, however inartificially the complaint may have been drawn.

### 4. Same—Master and Servant—Federal Employers' Liability Act.

Where the plaintiff, an employee, is injured by a railroad company while engaged in interstate commerce, and therefore has no cause of action except under the Federal Employers' Liability Act, and in his complaint alleges that the defendant negligently caused the injury by failing to provide him a safe place to do the work required of him, for which he asks damages; that the defendant was operating an interstate railroad, without reference to intrastate business; that he was an employee of the defendant and injured in the discharge of his duties as such: *Held*, allegations sufficient to bring the cause of action alleged within the Federal statute and for the plaintiff to maintain his action thereunder.

### 5. Pleadings—Amendments—Master and Servant—Federal Employers' Liability Act—Statutes.

Our statute permits pleadings to be amended as of course, without cost or prejudice to the proceedings already had at any time before the period for answer expires, or thereafter, unless it is for the purpose of delay beyond the term for trial (Revisal, sec. 505), or within the discretion of the trial judge, on such terms as he may deem proper, among other things "by inserting other allegations material to the cause (Revisal, sec. 507); and· where the cause of action falls within the Federal Employers' Liability Act and is brought in the State court, an amendment may be allowed there alleging it to have been brought under the provisions of that act, where, as in this case, the original complaint, with the amendment, states a good cause of action thereunder.

### 6. Master and Servant—Pleadings—Amendments—Federal Employers' Liability Act—State Courts—Concurrent Jurisdiction—Statutes.

Where an action has been brought in the Federal court under the provisions of the Federal Employers' Liability Act, allegations material to the case may be inserted by amendment in conformity with our statute (Revisal. sec. 507), and as our State courts are given concurrent jurisdiction with the Federal courts by the Federal statutes, the State court is given like power to permit amendments when the action has been commenced therein.

### 7. Master and Servant—Federal Employers' Liability Act—Pleadings—Amendments—Limitation of Actions.

Where an action has been brought in the State court under the provisions of the Federal Employers' Liability Act, and an amendment to the complaint has been properly allowed to bring the cause within the terms of the Federal statute, the amendment relates back to the time of the commencement of the action, and the statutory provision that the action must be brought in two years has no application when the action itself has been commenced in the required period.

### 8. Master and Servant—Negligence—Duty of Master—Safe Place to Work—Trials—Evidence—Questions for Jury.

In an action to recover damages for a personal injury to an employee caused by the negligence of the defendant railroad company, where there

RENN v. R. R.

is evidence tending to show that the plaintiff, whose duty it was to repair pumps along the defendant's line of interstate railway, was injured, while in the course of his employment, at night, by falling upon ice formed upon the usual path from the pumping house, caused by the negligent overflow of the defendant's water tank, in freezing weather, which should have been removed by the defendant's employees, engaged in this character of work at the place during the preceding day; that at the time the plaintiff was carefully walking along this path behind the one who had been operating the pump and who carried a lighted lantern to show them their way; that the ice had become covered with snow which concealed it; that plaintiff was not informed thereof by the other employee of the defendant; that it was unusual for the defendant to permit this condition at the place: Held, sufficient upon the issue of defendant's actionable negligence in failing to provide a safe place for the plaintiff to go while in the performance of the work required of him.

9. **Master and Servant—Negligence—Assumption of Risks—Instructions—Trials.**

Where an employee of a railroad company sues for damages for a personal injury received by falling upon ice negligently left at a place where he was required to go at night in the course of his employment, and there was evidence tending to show negligence therein on the part of the defendant and proper care by the plaintiff while walking there; that the snow covered and concealed the ice, of which the plaintiff was neither aware nor informed, the occurrence being at night and by lantern light: Held, a charge of the court was correct that the plaintiff assumed the risks which inclement weather added to his employment, and if the injury complained of resulted solely from that source he could not recover; but if the ice there was caused by the negligence of the defendant in overflowing the water tank in freezing weather and the plaintiff was unaware of the fact, and could not have known thereof by the exercise of ordinary care under the circumstances, then he would not be held to have assumed the risks in walking upon the path at the time of the injury.

10. **Evidence — Negligence — Opinion — Objectionable Answers — Motions to Strike Out—Objections Stated—Appeal and Error.**

The negligence alleged in this action by an employee is that his employer, the defendant, had not provided him a safe place to work by reason of permitting ice to accumulate along a path he was required to go at night in the discharge of his duties, which the evidence tended to show was caused by the overflowing of a tank used by the defendant in the charge of another employer. The plaintiff's witness was asked, "Why was the tank running over?" to which he replied, "Because the pumper was neglecting his duty and let it continue to run after the tank was full." The admission of testimony that the pumper was neglecting his duty is disapproved as an expression of opinion, but the motion to strike out the answer being made on another untenable ground stated at the time by the appellant, will not be considered on appeal.

11. **Pleadings—Negligence—Allegations Sufficient.**

Where an employee alleges negligence, in his action to recover damages against his employer, in his failing to furnish him a safe place to work, in that he negligently permitted ice, in freezing weather, to be upon a pathway he was required to go in the performance of his duties, and there is evidence tending to show that the defendant's water tank at this place was negligently pumped to overflowing and the freezing of this overflowing caused the ice complained of to form: Held, the evidence that the tank ran over was competent without being specially alleged, for the purpose of showing that the ice did not form from natural causes.

**12. Evidence—Answers of Witness—Opinion—Statement of Fact.**
An answer to a question by a witness is not objectionable as a statement of an opinion upon the evidence, when, taking the answer as a whole and in connection with the context, it amounts only to testimony of a fact relevant to the inquiry.

**13. Same—Contributory Negligence.**
Where it is relevant to the inquiry in an action brought by an employee to recover damages caused by his falling upon ice alleged negligently to have been permitted to be upon a path the plaintiff was walking upon in the performance of his duties, testimony of the plaintiff that he did not cause his own fall, that he was as careful walking as he could be, is not objectionable as a statement of his opinion upon the fact, but is a statement of fact, and is admissible.

**14. Evidence—Answer of Witness—Motion to Strike Out—Opinion—Testimony of Fact—Appeal and Error—Harmless Error.**
Where a witness gives testimony beyond the scope of a question asked him, objection to such part of the answer should be by motion to the trial judge to strike it out; but under the circumstances of this case it is held that the part of the answer objected to was immaterial to the issue and would not have constituted reversible error if objection had been properly taken and overruled in the lower court.

BROWN, J., dissenting.

APPEAL by defendant from *Daniels, J.,* at June Term, 1915, of WAKE.

Action to recover damages for personal injury caused, as the plaintiff alleges, by the negligence of the defendant.

The original complaint is as follows:

1. That he is, and at the times hereinafter mentioned was, a resident of Wake County, North Carolina.

2. That the defendant is, and at the times hereinafter mentioned was, a corporation existing and doing business under the laws of the State of North Carolina, and was operating a line of railroad in the State of North Carolina and in the State of Virginia, and elsewhere.

3. That on 14 January, 1912, the plaintiff was in the employment of the defendant, and in the discharge of the duties of his said employment it became and was proper and necessary for the plaintiff to traverse a certain piece of ground beside the railroad track of the defendant and within its right of way at or near the station known as Cochran, Va., and to do so hurriedly in order to get aboard a train of cars then and there being operated by the defendant; that at the said time it was snowing and the ground had become and was covered and hidden by snow; that the defendant had carelessly and negligently caused, permitted and allowed water to be poured or spilled upon the ground at said place and to become frozen, thereby covering the ground for a considerable space with a sheet of ice, and the defendant had negligently permitted and allowed the said ice to be and remain upon the ground at the said place, and to become and be covered and hidden by

the snow, and had thereby negligently caused a highly dangerous condition to exist, and the said place and condition was highly dangerous and perilous and the defendant had negligently failed to warn the plaintiff in any manner of the existence of said danger; and on account of the negligence of the defendant in the particulars aforesaid, the plaintiff, while proceeding along the said ground in the exercise of ordinary prudence and care, and without notice, knowledge or information or warning of any kind of the existence of said danger, was caused to slip and fall heavily upon the ground, and thereby his collar bone and other bones were injured and dislocated, and he was bruised and wrenched and strained and sprained, and he was caused to suffer other serious, painful, dangerous and permanent injuries to the muscles, bones, nerves and ligaments of his body, head and extremities, and caused to suffer much pain and anguish of body and mind.

4. That on account of the negligence of the defendant as aforesaid, the plaintiff has been damaged in the sum of ten thousand dollars ($10,000).

Wherefore, the plaintiff prays judgment that he recover of the defendant the sum of ten thousand dollars damages, and the costs of this action, and that he have such other relief as may be proper.

The plaintiff offered evidence tending to prove: That he was a resident of the city of Raleigh, N. C., and in the employment of the defendant as repairer of its pumps between Raleigh, N. C., and Richmond, Va., and in the course of his employment was ordered by the defendant to go, as he did, from Raleigh, N. C., to Cochran, Va., to repair one of the pumps used by the defendant in connection with its line of railroad from Raleigh to Richmond; that he arrived at Cochran after dark; that the station building there is on the west side of the track; that across the track to the east there is a water tank which was used to supply water to engines of the defendant operating between Richmond and Raleigh; that the ground upon which the foundation of the tank is built is a couple of feet or more lower than the track; that southwardly from the tank is a tool-house which is about ... feet from the tank, and about ... feet northwardly from the tank and located in a depression is the pump-house; that water was pumped from the pool beside the pump up to the tank; that the railroad beside the pump-house was on a fill some ... feet high; that there was a path or way leading directly down from the track to the pump-house, but this was quite steep; that there was another path leading from the pump-house southwardly, parallel with railroad track and up the incline and around behind the tank, then between it and the tool-house and up to the railroad track and across to the station; that this was the usual path used by

pedestrians in going back and forth between the station grounds and the pump, and the plaintiff was in this path when he fell; that upon his arrival that night the plaintiff left the train on the western side, went around the engine and down to the pump; that he then discovered that, to make the repair, he would need a four-inch flange union, and he recalled that the company had one at Skelton, Va.; that a work train of the defendant was standing on the track beside the station and about to leave (southbound) for Skelton, Va., and Norlina, N. C.; that the plaintiff, in company with the pumper, Lewis, and the section foreman, Parks, in charge of that section, left the pump-house for the purpose of boarding the train and going for said flange union; that the pumper led the way, carrying in his hand a lighted lantern, the plaintiff following a few feet after him, and the section foreman, Parks, following a few steps behind the plaintiff; that they traversed the above mentioned usual path and were still in the same and within a few feet of the railroad track when the plaintiff fell; that the path up to that point had been rough; that the weather had been cold for some time and there had been snow on the ground, which had partly melted during the days and froze again during the nights after being tracked, and hence was roughened; that during the day of the night on which plaintiff's injury occurred the defendant's pumper had unnecessarily allowed the pump to run long after the tank was filled with water and caused the tank to overflow for several hours, and this water which had overflowed for several hours, and this water which had overflowed had spread and frozen upon the ground and pathway at the place where the plaintiff fell, leaving a smooth, slick surface, dangerous for the use of pedestrians; that snow had been falling for an hour or two before plaintiff's fall, and this had covered the smooth ice, and plaintiff could not see it, and knew nothing of the presence of the ice; that he did not know it was there and could not discover it by the use of his sight, and that he had never seen ice there before; that the defendant had never permitted the formation and accumulation of ice there before; that he was walking in a careful manner, watching his footsteps by the aid of the lantern in front of him; that neither the pumper nor the section foreman, Parks, had in any way warned him of the condition of said pathway, and that Parks knew it existed, as he had been present at the station all during the day and had seen the water overflowing for a long time and freezing, as aforesaid; that Parks had there present all during the day a section force of eight men and only three of them had been occupied during the day, and the work train had been at that station for several hours with its crew of hands, and none of them had removed the ice or roughened it, or placed any substance upon it to make the footing safe, and the ice covered at that point the usual path

RENN v. R. R.

for approaching the train from that side of the station; that the plaintiff slipped on the ice and fell and was seriously injured.

The plaintiff introduced a witness by the name of Parks who was present at the time the plaintiff was injured and testified as to the condition of the ground, of the weather and to other circumstances, including that of the tank .running over. He was asked the question, "Why was the tank running over?" and he replied, "Because the pumper was neglecting his duty and let it continue to run after the tank was full," and the defendant excepted.

At the conclusion of the evidence the defendant moved for judgment of nonsuit upon the following grounds:

1. That the evidence disclosed a right of action under the Federal Employers' Liability Act and that the complaint did not state a cause of action under this statute.

2. That there was no evidence of negligence.

The plaintiff contended that the complaint was sufficient and stated a cause of action under the Federal act, but asked leave to amend by alleging that the plaintiff was employed in interstate commerce at the time of his injury. The defendant objected to the amendment, as it appeared that it was asked for more than two years after the injury occurred. The amendment was allowed and the defendant excepted.

His Honor then overruled the motion for judgment of nonsuit and the defendant excepted. The defendant then filed an answer pleading the statute of limitations and assumption of risk as defenses.

The defendant requested his Honor, in apt time and in writing, to charge the jury, if they believed the evidence, to answer the issue as to the assumption of risk in the affirmative. This was refused and the defendant excepted.

His Honor charged the jury, among other things, as follows: That the employer is not a guarantor of the safety of the place of work or of the machinery and appliances of the work to be done by the employee. (The extent of its duty to its employee is to see that ordinary care and prudence are exercised to the end that the place in which the work is to be performed may be safe for the workmen.) To the foregoing charge in parenthesis defendant excepted.

His Honor also instructed the jury to answer the issue as to the statute of limitations in the negative, and the defendant excepted.

The jury returned the following verdict:

1. Was the plaintiff injured by the negligence of the defendant? Answer: Yes.

2. Did the plaintiff assume the risk of injury? Answer: No.

3. Did the plaintiff, by his own negligence, contribute to his injury? Answer: No.

4. What damage, if any, is plaintiff entitled to recover? Answer: $3,500.

5. At the time alleged in the complaint, was the defendant engaged in interstate commerce, and was the plaintiff employed by the defendant in such commerce? Answer: Yes.

6. Did the plaintiff's cause of action accrue more than two years before the amendment to his complaint was filed? Answer: No.

Judgment was entered upon the verdict in favor of the plaintiff and the defendant appealed.

*R. N. Simms, J. C. L. Harris and Douglass & Douglass for plaintiff. Murray Allen for defendant.*

ALLEN, J. It is admitted that the defendant is a common carrier engaged in interstate commerce and that the plaintiff was employed in such commerce at the time of his injury. It was therefore necessary and essential to allege a cause of action under the Employers' Liability Act, because the Federal statute is exclusive and supersedes the right of action under the State law. *Mondou v. R. R.,* 223 U. S., 1; *R. R. v. Wulf,* 226 U. S., 570; and *R. R. Co. v. Hayes,* 234 U. S., 86.

In the last case the Court says, "Had the injury occurred in interstate commerce, as was alleged, the Federal act undoubtedly would have been controlling, and a recovery could not have been had under the common or statute law of the State; in other words, the Federal act would have been exclusive in its operation, not merely cumulative"; citing for this position, among others, the *Mondou case,* which says of the Employers' Liability Act: "And now that Congress has acted, the laws of the States, in so far as they cover the same field, are superseded."

We must then examine the original complaint for the purpose of seeing if it alleges a cause of action under the Federal act, and, if not, must inquire into the power of the court to allow the amendment.

This presents a question of pleading and practice under the laws of this State, as the Supreme Court of the United States has said in *Brinkmeier v. R. R.,* 224 U. S., 268, in reference to an assignment of error on account of an amendment to a pleading: "Error is assigned upon this ruling; but as it involved only a question of pleading and practice under the laws of the State it is not subject to review by us," and there are many other cases to the same effect.

When we turn to our statutes we find it is provided by section 515 of the Revisal that "No variance between a pleading and the proof shall be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action upon the merits," and

by section 495, that "In the construction of a pleading for the purpose of determining its effect its allegations shall be liberally construed with a view to substantial justice between the parties."

These statutes were considered in *Blackmore v. Winders,* 144 N. C., 215, and it was there held, with reference to a pleading, that "If it can be seen from its general scope that a party has a cause of action or defense, though imperfectly alleged, the fact that it has not been stated with technical accuracy or precision will not be so taken against him as to deprive him of it. If in any portion of it, or to any extent, it presents facts sufficient to constitute a cause of action, or if facts sufficient for that purpose can be fairly gathered from it, the pleading will stand, however inartificially it may have been drawn or however uncertain, defective, or redundant may be its statements, for, contrary to the common-law rule, every reasonable intendment and presumption must be made in favor of the pleader," and this was approved in *Brewer v. Wynne,* 154 N. C., 467.

If this rule of construction is applied to the original complaint and it is construed in the liberal spirit contemplated by the Code, it alleges a cause of action under the Federal statute.

It must be kept in mind that the plaintiff was employed in interstate commerce at the time of his injury by an interstate carrier, and that he had no cause of action except under the Federal statute, because, as we have seen, it had the effect of superseding the State laws.

The original complaint alleges that the plaintiff was injured by the negligence of the defendant and that this caused him damage, which he prays the court to award him. He could not be entitled to recover damages except under the Federal statute. He alleges further that the defendant was operating a line of railway in the States of North Carolina and Virginia, and this made it an interstate carrier. There is no reference in the complaint to the fact that the defendant did an intrastate business. The plaintiff alleges further that he was in the employment of the defendant, presumably in the interstate business which the defendant was conducting. He says further that he was in the discharge of the duties of his said employment at the time of his injury and that he lived in Wake County, N. C., and was injured in Cochran, Va.

As there is no reference to intrastate business in the complaint, and it is alleged that the defendant was doing an interstate business, that he was injured while in the discharge of his employment, is not the inference permissible and reasonable that he was employed in interstate business and was injured in the discharge of his duties in that employment? If, however, the original complaint does not allege a cause of action under the Federal act, we are of opinion that the court had the

power to permit it to be amended by alleging that the defendant was employed in interstate commerce at the time of his injury.

We must again have recourse to our own statutes and decisions, and we find that "Any pleading may be once amended of course, without cost and without prejudice to the proceedings already had, at any time before the period for answering it expires; or it can be so amended at any time, unless it be made to appear to the court that it was done for the purpose of delay, and the plaintiff or defendant will thereby lose the benefit of the term for which the cause may be or is docketed for trial" (Rev., sec. 505), and that "The judge or court may, before and after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding, by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or *by inserting other allegations material to the case."* Rev., sec. 507.    (Italics ours.)

. These sections of the Revisal have been very fully considered in *Ladd v. Ladd,* 121 N. C., 118; *Lassiter v. R. R.,* 136 N. C., 93; *Bank v. Duffy,* 156 N. C., 87, and in other cases, and the distinction is drawn between a *defective statement of a cause of action which may be amended* and the statement of a defective cause of action which cannot be amended.

In the *Lassiter case* the Court says: "The difference between a defective statement of a good cause of action which can be amended by inserting other material allegations and a statement of a defective cause of action is that the latter cannot be made a good cause by adding other allegations."

If this is a correct statement of the law, it is conclusive upon the power of the court to amend the complaint by allowing an additional allegation to be made, as the original complaint with the amendment admittedly states a good cause of action under the Federal statute.   *R. R. v. Wulf,* 226 U. S., 570, seems to be decisive of the right to amend.   In that case Sallie C. Wulf commenced an action in the Circuit Court of the United States in the Eastern District of Texas, in her individual capacity to recover damages for the death of her son who was killed in Kansas, and she alleged in her original complaint that in the State of Kansas a right of action was provided by statute for injuries resulting in death.   The defendant was engaged in interstate commerce and the intestate was killed while employed in that commerce.   The plaintiff could not sue in her individual capacity under the Federal act.   More than two years after the injury the Circuit Court permitted an amendment by which she was allowed to prosecute the action as administratrix of her son.   The Supreme Court of the United States approved the amendment and held that it was not equivalent to the commence-

ment of a new action so as to render it subject to the two years limitation prescribed by section 6 of the Employers' Liability Act, and that the amendment related back to the beginning of the action.

*R. R. v. Wyler,* 158 U. S., which is relied on by defendant, is commented upon in the *Wulf case* and distinguished, and it was pointed out that in the *Wyler case* the amendment introduced a new and distinct cause of action, while in the case before us there is but one cause of action, and if the original complaint was defective it is only because of the absence of one allegation necessary to a complete and perfect statement of a cause of action.

The Employers' Liability Act confers concurrent jurisdiction upon the State courts for the trial of causes of action arising thereunder and, instead of prescribing the practice and procedure for the State courts, it is provided in another act of Congress as to actions at law in the Federal courts (and this falls within that class), that "The propriety of amendments to pleadings in the Circuit and District Courts of the United States is governed by the provisions of section 1914 of the Revised Statutes to the effect that: The practice, pleadings and form and mode of proceeding in civil causes other than equity and admiralty causes in the Circuit and District Courts shall conform as near as may be to the practice, pleadings and form and mode of proceeding existing at the time in like causes in the courts of record of the State within which such Circuit or District Courts are held, any rule of court to the contrary notwithstanding. 1 Ency. U. S., 298."

If, therefore, the action had been commenced in a court of the United States the power would have existed of "inserting other allegations material to the case" in conformity with our statute (Rev., sec. 507), and this power cannot be less when the action is brought in the courts of the State.

If a proposed amendment cannot be allowed because material and necessary to the statement of a cause of action, the power of amendment, which *Mr. Justice Swayne* says, in *Tilton v. Cofield,* 93 U. S., .... "is incidental to the exercise of all judicial power and is indispensable to the ends of justice," becomes useless and of no effect, as an amendment need not be made if not material.

We therefore conclude that the court had the power to allow the amendment, and this also disposes of the exception to the charge upon the sixth issue because the amendment related back to the commencement of the action, which was brought within two years from the time of the injury.

The defendant also relies, in his motion for nonsuit, upon the contention that there is no evidence of negligence, and this necessitates an examination of the duty imposed upon the employer and whether the

evidence discloses a failure to perform that duty, which proximately caused the injury to the plaintiff.

In *R. R. v. Horton*, 233 U. S., 492, the Court says: "The common law rule is that an employer is not a guarantor of the safety of the place of work or of the machinery and appliances of the work; the extent of its duty to its employees is to see that ordinary care and prudence is exercised, to the end that the place in which the work is to be performed and the tools and appliances for the work may be safe for the workmen," and concludes that the Employers' Liability Act has not changed this rule of liability.

It being, then, the duty of the defendant to furnish the plaintiff a reasonably safe place in which to do his work, and the authorities are all to this effect, is there any evidence that it failed in the performance of this duty?

The plaintiff was injured at night and he testifies that he was exercising due care for his own safety. He had not been about the premises where he was injured on the day of the injury until he was injured.

There is evidence that an employee of the defendant whose duty it was to pump water into the tank unnecessarily permitted the pump to continue working after the tank was full, and that this caused water to pour out upon the path over which the plaintiff was required to go in the performance of his duties; that this continued for such a length of time that a solid sheet of ice formed across the path; that the ice was smooth, slippery and dangerous, that the weather was very cold and that it might be reasonably anticipated that ice would form where the water fell; that this continued during the day before the plaintiff was injured and that the ice could have been easily removed; that a sufficient work force was present and available to remove the ice, and that it did not do so; that this work force had removed ice from the pathway nearer to the station than the place where the plaintiff was injured; that the ice was covered with snow which concealed its presence from the plaintiff. This furnished some evidence that the defendant had failed in the performance of its duty to provide a reasonably safe place for the plaintiff to work, and the evidence further shows that the plaintiff was injured by the failure to perform this duty. We therefore conclude that the judgment of nonsuit was properly overruled.

The charge of his Honor as to the duty of the defendant to provide a safe place is substantially taken from the *Horton case,* which we have before cited, and the same case sustains the ruling refusing to direct a verdict in favor of the defendant on the issue of assumption of risk. In that case the Court says: "Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in

fixing the rate of wages, and a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them."

His Honor followed this statement of the law, quoting this language from the opinion, and saying further: "If, by the exercise of ordinary care and prudence (it was the duty that he owed), he could have seen that the ice had accumulated at that place, and could have become aware that there was risk in walking over it, then he would be charged with such facts as the exercise of such ordinary care would have disclosed to him, and if you are satisfied that they would have disclosed to him that the ice was there and that it was slippery, then you will find that he has assumed the risk of the injury in passing over it, and in that event you would answer the second issue 'Yes.'" And again, "That the plaintiff in his employment, fixing pumps for the defendant, and in going from place to place in the performance of his duty, assumed the risk which inclement weather added to his employment, and if you find by the greater weight of the evidence that the plaintiff slipped on the ice or snow, which resulted solely from the inclement weather conditions, and that the same were not negligently left on the path over which he was traveling, if he was traveling over the path, you will answer the issue of assumption of risk, the second issue, 'Yes.'" And again, "If you find from the evidence, by the preponderance thereof, that the plaintiff knew of the existence of the ice at the place where he fell, or by the exercise of care, the care of a prudent man, could have knowledge of its existence at that point, he assumed the risk of injury from slipping thereon, and you will answer the issue of assumption of risk, which is issue No. 2, 'Yes.'"

This complies with the rule laid down in the *Horton case,* because, if the evidence of the plaintiff is true, the condition of the place where the plaintiff was injured was not normal, but was unusual, and the plaintiff could not discover it by the exercise of ordinary care.

The witness Parks was asked: "Why was the tank running over?" Objection by the defendant. Objection overruled; defendant excepted. He replied: "Because the pumper was neglecting his duty and let it continue to run after the tank was full." We do not approve of the expression, "because the pumper was neglecting his duty," and doubt-

less if defendant had moved to strike this out as an expression of opinion the motion would have been granted, but the motion to strike out was made upon another ground and one which is not tenable—that this particular act of negligence was not alleged in the complaint, and it is well settled that "Where a party states the ground of his objection to evidence below he cannot rely upon a different ground in this Court." *Ludwick v. Penny,* 158 N. C., 113.

In *Presnell v. Garrison,* 122 N. C., 595, *Furches, J.,* says: "But as a wrong reason was assigned for the objection, we treat the case as if no objection had been taken"; and *Rollins v. Henry,* 78 N. C., 342; *Kidder v. McIlhenny,* 81 N. C., 123, and *Jones v. Call,* 93 N. C., 179, support the same rule.

It was not necessary to allege the negligent act of permitting the tank to run over, in the complaint, because the negligence relied on is that the defendant did not provide a safe place for the plaintiff to work, and evidence that the tank ran over was competent under this allegation for the purpose of showing that the ice did not form across the path from natural causes.

If, however, his Honor had been asked to strike out the answer of the witness upon the ground that it was an expression of opinion, his refusal to do so would not have constituted reversible error, because when the answer is considered as a whole and in connection with the context it amounts to no more than a statement that the pumper permitted the pump to continue to run, and the tank ran over, which is a fact and not an opinion.

The plaintiff while on the witness stand was asked: "Did you cause your own fall in any way?" Objection by the defendant; objection overruled; defendant excepted; and he replied: "No, I did not. I was just as careful walking as I could be." *Phifer v. R. R.,* 122 N. C., 940, is authority for the position that the latter part of the answer is objectionable as an expression of an opinion, but the later cases and the trend of authority elsewhere are that it is competent as a statement of a fact. *Taylor v. Security Co.,* 145 N. C., 385; *Britt v. R. R.,* 148 N. C., 40; *S. v. Leak,* 156 N. C., 647; 3 Wig. Ev., sec. 1938; McKelvey Ev., p. 220.

Professor Wigmore says, vol. 3, sec. 1949: "This topic is one of the few upon which there has ever existed in the English precedents any foundation for doubt. The subject of the testimony in question is manifold; sometimes it is whether proper care was taken, sometimes whether action was reasonable, sometimes whether sufficient skill was shown, sometimes whether a place or a machine was safe; but all the forms seem reducible to a general one, namely, whether a certain standard of conduct was observed. Looking first at the orthodox practice in

England, it is clear there is not and never has been any real question as to the propriety of such testimony. The morbid and doctrinaire theory of cautiousness which is the foundation of the American rulings has never been known at the English bar." He speaks of the rule of exclusion as a "modern excrescence on the common law" and concludes that such evidence is competent.

Mr. McKelvey, in a passage quoted with approval in *S. v. Leak,* says: "The instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals and things, derived from observation of a variety of facts presented to the senses at one and the same time, are, legally speaking, matters of fact, and are admissible in evidence. A witness may say that a man appeared intoxicated or angry or pleased. In one sense the statement is a conclusion or opinion of the witness, but in a legal sense, and within the meaning of the phrase, 'matter of fact,' as used in the law of evidence, it is not opinion, but is one of the class of things above mentioned, which are better regarded as matters of fact. The appearance of a man, his actions, his expression, his conversation—a series of things—go to make up the mental picture in the mind of the witness which leads to a knowledge which is as certain, and as much a matter of fact, as if he testified, from evidence presented to his eyes, to the color of a person's hair, or any other physical fact of like nature. This class of evidence is treated in many of the cases as opinion admitted under exception to the general rule, and in others as matter of fact—'shorthand statement of fact'—as it is called. It seems more accurate to treat it as a fact, as it embraces those impressions which are practically instantaneous, and require no conscious act of judgment in their formation. The evidence is almost universally admitted, and very properly, as it is helpful to the jury in aiding to a clearer comprehension of the facts."

In *S. v. Williams,* 168 N. C., 195, expressions in dying declarations "I did nothing," "He cut me for nothing," "They had no occasion to shoot me," "I have done nothing to be shot for," are considered as statements of facts and not opinions. If, however, the evidence was objectionable it could have had but little, if any, bearing upon the issue, because the plaintiff described his conduct in detail and showed he was careful, and there was no evidence to the contrary.

We might also dispose of the exception upon the ground that it was competent for the witness to say he did not cause his own fall, and if the answer went beyond the question the remedy of the defendant was to move to strike out. *Caton v. Toler,* 160 N. C., 106.

The judges of the Superior Court should be careful in the application of this principle to see that opinions are not admitted under the guise

of facts, and usually it is better and wiser to require the witness to state the circumstances surrounding the transaction and no more.

We have carefully considered the whole record and find no error.

No error.

BROWN, J., dissenting: 1. The original complaint in this case does not state a cause of action under the Federal Employers' Liability Act. The argument that it does state such a cause of action is the same argument advanced in the first employers' liability case, *Howard v. R. R.*, 207 U. S., 463, and was rejected by the United States Supreme Court. It was held that the Federal Employers' Liability Act of 1906 was unconstitutional because it embraced all of the employees of a carrier engaged in interstate commerce, whether the employees were employed in such commerce at the time of their injury or not. Congress then passed the act of 1908 and limited it to employees who are killed or who are injured *while employed in interstate commerce*. The most essential part of a cause of action under the statute is the character of the employment in which plaintiff was engaged at the time of his injury. It makes no difference that the employer is a carrier engaged in interstate commerce, unless the injured employee was employed in such commerce at the time of his injury. In *Brinkmeier v. R. R.*, 224 U. S., 268, the terms of the act in question were such that its application depended, first, upon the carrier being engaged in interstate commerce by railroad, and, second, upon the use of the car in moving interstate traffic. It did not embrace all cars used on the line of such carrier, but only such as were used in interstate commerce. *Mr. Justice Van Devanter*, writing the opinion of the Supreme Court of the United States, says:

"This was an action to recover for personal injuries sustained by a brakeman while coupling two freight cars on a sidetrack of the defendant railway company at Hutchinson, Kansas. The defendant prevailed in the State courts (81 Kan., 101, 105 Pac., 221), and the plaintiff brings the case here. The injury occurred 12 November, 1900, and the action was begun 15 March, 1901.

"The question first presented for decision is whether the petition stated a cause of action under the original safety appliance act of 2 March, 1893, 25 Statutes at Large, 531, chapter 196, United States Compiled Statutes, 1901, page 3174, which made it unlawful for any common carrier engaged in interstate commerce by railroad 'to haul or permit to be hauled or used on its line any car used in moving interstate traffic, not equipped with couplers coupling automatically by impact,' etc. The petition, if literally construed, charged that defendant was a common carrier engaged in interstate commerce by railroad; that the cars in question were not equipped with couplers of the prescribed

type, and that the plaintiff's injuries proximately resulted from the absence of such couplers; but there was no allegation that either of the cars was then or at any time used in moving interstate traffic. The Supreme Court of the State held that in the absence of such an allegation the petition did not state a cause of action under the original act. We think that ruling was right."

It would seem unnecessary to refer to other authorities in support of the propositions, first, that the construction of this complaint for the purpose of determining whether it states a cause of action under the Employers' Liability Act is a Federal question, and not subject to control by State statutes and the decisions of State courts; and, second, that the complaint does not state a cause of action under the Federal act. Reliance by the Court upon the language quoted from the *Brinkmeier case* to support the conclusion that this is not a Federal question results from a misunderstanding of the language used and its effect. Plaintiff brought suit in 1901, alleging a cause of action under the State law. In 1908 he proposed to amend so as to bring the action under the Federal safety appliance act. The Kansas court held that this amendment could not be made, the period of limitation having expired in the meantime. The Supreme Court of the United States said that this ruling involved only a question of pleading or practice under the laws of the State. If the Federal safety appliance act is examined, the reason for this statement will become apparent. That act contains no limitation whatever as to time within which an action based upon its provisions must be brought. The period of limitation referred to by the Kansas court and by the Supreme Court was the limitation fixed by the law of Kansas, and neither the plaintiff nor defendant could have been deprived of a right arising under a Federal statute by the ruling of the Kansas court permitting the amendment. In the case before us the Federal act limits the time. There·can be no doubt that the United States Supreme Court will review the ruling of a State court which deprives a defendant of the benefit of this provision of the act.

In Thornton's Federal Employers' Liability Act (2d edition), sec. 140, it is said: "The true rule is that if the declaration or complaint does not disclose the action is based or grounded upon the statute, then the plaintiff is not seeking to recover for an injury received while engaged in interstate traffic of the defendant, and the sufficiency of his pleading must be measured by the general State law, the provisions of the statute not being involved. However, if the evidence discloses the case is one under the statute, there will be a fatal variance and the plaintiff must fail."

The conclusions in the opinion that the complaint sufficiently alleges that the plaintiff was employed in interstate commerce are drawn from

these facts: An employee of an interstate carrier who lives in Wake County, North Carolina, is injured while at work in Cochran, Va. If this conclusion is justified the test for the application of the statute would be, not the character of the employment, but the place of residence of the employee. If the inference is permissible, as is suggested, that plaintiff was employed in interstate commerce when injured, he would have required proof of no other facts than those alleged in order to recover under the Federal act. Can it be possible that any court would hold that proof of the facts alleged, and no more, would show a case triable under the Federal act to the exclusion of the State law?

2. The court had no power to allow the amendment because it sets up a new cause of action, which is barred by the two-year period of limitation fixed by the Federal act.

This is a Federal question, involving the enforcement of one of the most important features of the Federal Employers' Liability Act, and in looking to our statutes and decisions as the means of depriving the defendant of the benefit of the limitation period provided by section 6 of that act, I think the Court is going astray. But if we look to our statutes and decisions, there is every authority for holding that the allowance of this amendment was erroneous.

It will be found that section 507 of the Revisal does not end with the language quoted in the opinion, but contains this further provision, which is the part particularly applicable to this case: "Or when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the fact proved." The plaintiff was permitted to amend his complaint to conform to the facts proved, and the statute by strongest implication prohibits this when, as here, the amendment changed substantially *the claim and the defense.*

It is true that we have held that a defective statement of a good cause of action may be amended, but such decisions cannot be applied in this case. This is not a defective statement of a good cause of action. It is a perfect statement of a cause of action good at common law and under the State statute. The fact that plaintiff did not have the cause of action which he pleads does not make his plea defective. The Court fails to note the distinction between the cause of action which arose in favor of plaintiff and the cause of action which he sets forth in his complaint. Defective statement of a good cause of action may be taken advantage of by demurrer. Would this Court seriously consider a demurrer to the original complaint in this action? It is lacking in none of the essentials of a cause of action, and a demurrer would have been overruled without argument. It is true, as the Court says, that the original complaint with the amendment states a good cause of action under the Federal statute, and that is the very basis of the defendant's

10—170

objection, that it does so after the right of action under the statute has expired. But it does not follow that the original complaint contained a defective statement of the same cause of action rather than a good statement of a different cause of action.

It has been the long established rule in this State that where by an amendment a new charge is introduced against the defendant, he may make such defenses to it as if it were the foundation of an action then newly begun. *Christmas v. Mitchell*, 38 N. C., 535; *Cogdell v. Exum*, 69 N. C., 464; *Patterson v. Wadsworth*, 89 N. C., 407; *Gillam v. Insurance Co.*, 121 N. C., 369. "Amendments are not admissible where the effect would be to prejudice acquired interests, or take away any defense which could be made to an action begun at the time of the amendment." *Henderson v. Graham*, 84 N. C., 496.

"Where the cause of action is changed by an amended complaint, the defendant has the right to set up in the answer thereto any legal defense, including the statute of limitations, just as if the action had been commenced at the date of the amended complaint." *Sams v. Price*, 121 N. C., 392.

In *Bennett v. R. R.*, 159 N. C., 345, we said: "While courts are liberal in permitting amendments, such as are germane to a cause of action, it has been frequently held that the court has no power to convert a pending action that cannot be maintained into a new and different action by the process of amendment. *Best v. Kinston*, 106 N. C., 205; *Merrill v. Merrill*, 92 N. C., 657; *Clendennin v. Turner*, 96 N. C., 416. In the last case it is said: 'The court has no power, except by consent, to allow amendments, either in respect to parties or the cause of action, which will make substantially a new action, as this would be not to allow an amendment, but to substitute a new action for the one pending.'" *Hall v. R. R.*, 146 N. C., 345.

The Federal Employers' Liability Act gives a cause of action separate and distinct from the common-law cause of action and the cause of action created by our Revisal, sec. 2646. *R. R. v. Horton*, 233 U. S., 492. A cause of action not previously existing was created by the Federal act. In *Taylor v. Taylor*, 232 U. S., 363, the Supreme Court says: "The Federal Employers' Liability Act is more than a statutory declaration of the remedy to be pursued; it is the 'source of his (the employee's) right.'" In *R. R. v. Behrens*, 233 U. S., 473, *Mr. Justice Van Devanter* says: "There can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in interstate commerce and while the employee is employed by the carrier in such commerce." See, also, *Pedersen v. R. R.*, 229 U. S., 150; *R. R. Co. v. Craft*, 237 U. S., 648; *Mondou v. R. R.*, 223 U. S., 1; *R. R. v. Vreeland*, 227 U. S., 59.

If, as is held by the Supreme Court of the United States, the effect of this statute was not to create a new remedy for an existing cause of action, but to create a new cause of action, then it follows necessarily that it is not the same cause of action as that existing at common law and under the statute of this State, and, in introducing this cause of action by way of amendment, the plaintiff cannot avoid the requirement that suit to enforce such cause of action must be brought within two years after the cause of action accrued. Our decisions, which I have cited, seem to conclusively support the defendant's position in this case. But, as I have said, this is not a State but a Federal question, and must be controlled by the decisions of the United States courts. *R. R. v. Wyler,* 158 U. S., 293, seems to me to be directly in point against the plaintiff's right to amend his complaint. In that case the original complaint set forth a cause of action under the general law of master and servant. The amendment declared under a State statute regulating such action. It was held that this amendment could not be permitted because it constituted a departure in pleading and set up a new cause of action. The principles laid down in this case have been accepted everywhere, and the United States Supreme Court has had frequent occasion to reëxamine the case, and its correctness has never been questioned. *R. R. v. Laird,* 164 U. S., 396; *United States v. Dalcour,* 203 U. S., 408, 423; *R. R. v. Wulf,* 226 U. S., 570; *R. R. v. Hesterly,* 228 U. S., 703.

An examination of the *Wulf case,* 227 U. S., 570, will show that it is not decisive of the right to amend in this case. From the institution of the *Wulf case,* it was contended, and appears in the original complaint, that the plaintiff's intestate was *employed in interstate commerce* at the time of his death. The allegation is that the deceased at the time of his death was "in the employ of the defendant as a locomotive fireman and in the performance of his duties as such upon a train bound from Parsons, in the State of Kansas, to Osage, in the State of Oklahoma." The amendment permitted merely changed the character in which plaintiff sued from her individual capacity to administratrix. The Supreme Court of the United States held that this was a change in form and not in substance and did not change the cause of action as originally alleged. The Court said in the opinion that in the original and amended petitions "It was sufficiently averred that deceased came to his death through injuries suffered while he was employed by the defendant in interstate commerce. In *Bactillo v. Commission Co.,* 131 Fed., 680, cited in the *Wulf case,* the rule of the Federal courts in respect to amendments is stated as follows:

"An amendment to a petition, which sets up no new cause of action or claim, and makes no new demand, but simply varies or expands the

allegations in support of the cause of action already propounded, relates back to the commencement of the action, and the running of the statute against the claim so pleaded is arrested at that point. But an amendment which introduces a new or different cause of action, and makes a new or different demand, does not relate back to the beginning of the action, so as to stop the running of the statute, but is the equivalent of a fresh suit upon a new cause of action, and the statute continues to run until the amendment is filed; and this rule applies although the two causes of action arise out of the same transaction, and, by the practice of the State, a plaintiff is only required to state the facts which constitute his cause of action."

It is clear that the *Wulf case* and the *Wyler case* are not in conflict. In *R. R. v. Hesterly,* 278 U. S., 703, it is said:

"The plaintiff, not the defendant, had the election how the suit should be brought, and as he relied upon the State law, the defendant had no choice, if it was to defend upon the facts. Whether the defendant could have defeated the first count also on the ground that the plaintiff was suing upon a statute of one jurisdiction, whereas the action could be maintained only on that of another, need not be decided, since the defendant asks reversal of only so much of the judgment as rests on the second count. Hence it is unnecessary to consider whether the principle of *R. R. v. Wyler,* 158 U. S., 285, 39 L. Ed., 983, 15 Sup. Ct. Rep., 877, or that of *R. R. v. Wulf,* 226 U. S., 570, 577, 57 L. Ed. . . ., 33 Sup. Ct. Rep., 135, should be applied."

In *Morrison v. R. R.,* 40 App. Cas., D. C., 391, which is in point, it is said: "The original complaint herein invoked the rule of the common law as a ground of action. The attempt of the plaintiff more than one year after the alleged bad faith of the defendant to invoke a different rule, namely, the rule prescribed by the act of 1906, must be held to amount to the commencement of a new action. The change was one of substance and not merely of form. *R. R. v. Wyler,* 158 U. S., 285. It is unnecessary, therefore, to determine the effect of an excuse seasonably pleaded, for failure to bring the suit within the statutory period." *Moliter v. R. R.,* 168 S. W., 250, is in point and supports the defendant's position. It was there admitted that plaintiff was employed in interstate commerce by a carrier engaged in such commerce. It appeared that plaintiff failed to plead facts bringing his action under the Federal act, and proposed to amend, after verdict, so as to include the necessary allegations. The Court refused the amendment, and says:

"Plaintiff's action, as stated in his pleading, being either under the common law or the statute of Missouri, and not under the Federal statute, he cannot recover under the latter statute without changing his cause of action from law to law; and that we decided in *McAdew v.*

*R. R., supra,* he could not do.  See, also, *R. R. v. Wyler,* 158 U. S., 285, 15 Sup. Ct., 877, 39 L. Ed., 983; *R. R. v. Seale,* 229 U. S., 156, 33 Sup. Ct., 651, 57 L. Ed., 1129.

"Plaintiff's contention is that, if the evidence showed his right of action was under the Federal statute, he could recover, although no facts constituting such action were pleaded, and although he did not submit the case to the jury under that statute.   That idea is no less than a claim that a pleading does not bind the pleader, and indeed is unnecessary, since a recovery may be had for the violation of any right which the evidence may disclose. . . . But it is said that, conceding the error herein pointed out, judgment should nevertheless be affirmed and the cause remanded, to the end that the petition be amended to conform to the proof.  We think there is no authority for such course.  The defense in plaintiff's case is not a mere variance; it is a total failure to prove the cause of action alleged.  'In short, the case pleaded was not proved, and the case proved was not pleaded.' *R. R. v. Seale,* 229 U. S., 161.  This is made manifest by the suggestion that, under plaintiff's petition, contributory negligence does not affect the measure of his damages and only goes to defeat the action, while under the Federal statute it does not defeat the action, but does affect the measure of damages."

In *Allen v. R. R.,* 229 Pa., 97, it is held that a complaint stating a cause of action under the State law cannot be amended, after the limitation period has expired, so as to charge that defendant failed to comply with the Federal Safety Appliance Act.

The Court says: "It is also true that if, as claimed by the plaintiff, all the facts necessary to sustain a recovery on the amended statement were set forth in the original statement, the amendment would still be a change or departure from the original statement, not from fact to fact, but from law to law; from an action founded on the common law to one founded on a statute abrogating the common law, which is equally effective to prevent an allowance of the amendment.  In such case the plaintiff bases his right of recovery upon other and different law, instead of other and different facts, and it constitutes a departure from the original cause of action.  *R. R. v. Wyler,* 158 U. S., 285, 39 L. Ed., 983, 15 Sup. Ct. Rep., 877; *R. R. v. Hurd,* 56 L. R. A., 193, 47 C. C. A., 615, 108 Fed., 116."

In *Hall v. R. R.,* 157 Fed., 464, it is said: "The question of 'relation back' of amendments is a fiction of the law, and shall never be allowed when to do so would, to the prejudice of a litigant, deprive him of a substantial legal right."  It is unnecessary to recite the features in which a cause of action at common law and under our statute differs from a cause of action under the Federal statute.  They are numerous

and important, as shown by the cases of *R. R. v. Zachary,* 232 U. S., 248; *R. R. v. Horton,* 233 U. S., 492; *R. R. v. Tilghman,* 237 U. S., 499; *R. R. v. Craft,* 237 U. S., 648; *R. R. v. White,* 238 U. S., ..., when considered in connection with *Zachary v. R. R.,* 156 N. C., 496; *Horton v. R. R.,* 162 N. C., 424; *Tilghman v. R. R.,* 167 N. C., 163; *Bolick v. R. R.,* 138 N. C., 370; *Burnett v. R. R.,* 163 N. C., 186.

3. I think the Court also errs in holding that there is any evidence of negligence in the record. I fail to see wherein the defendant was wanting in the discharge of any duty it owed the plaintiff on the night when he was hurt. Thousands of persons before this plaintiff have slipped up on the ice and hurt themselves without blaming any one but their own bad luck.

I cannot see that the defendant was negligent in not anticipating that its tank would overflow and the water would submerge the path and that the night would be freezing and the plaintiff would slip on it and injure himself. If it was the duty of the defendant to keep snow and ice off the path leading from the tank to the pump, it was its duty to keep it off of every path at every point on its right of way. It makes no difference how the water got on the path, whether through nature or from the accidental overflow of the tank, if the defendant owed the plaintiff no duty to keep this particular path free from ice, there was no breach of duty upon its part.

There is no evidence that the path being used by the plaintiff was marked out by the defendant as the path for its employees. Plaintiff's witnesses said it was the usual path. They also said that employees were free to go any way they desired in getting to the pump, and the evidence shows that there were two additional paths. There is nothing to show that the defendant had ever adopted the path or designated it as the proper one for its employees; there is nothing to show that the defendant marked it out or kept it up. It may have been, and probably was, if a path at all, one of the several ways of getting to the pump. The tank and pump were both in the open country with nothing to prevent pedestrians using any path they saw fit, or walking in any direction they desired. Plaintiff says he was walking in the usual path from the pump to the train.

The evidence of the plaintiff shows that there is another path that he might well have taken which comes up to the other side of the tank and on the opposite side from that on which the plaintiff fell. Parks, one of the plaintiff's witnesses, testifies that one can go to the pump-house any way he wants to go; that there are other paths leading to the pump-house. This witness also says that it was a very hard winter, the hardest winter he had ever seen around Cochran, and that everything was frozen up. This evidence shows that the plaintiff had other routes to take, and

The defendant had no notice that plaintiff would use that path. If it was dangerous to use plaintiff had equal opportunity with defendant to know the danger. Plaintiff had his choice of the paths leading to the pump. He was free to go where he pleased. That he selected the path in which the ice had accumulated during the day ought not to be charged against the defendant.

"The duty of a master to provide a reasonably safe place in which his servant shall work does not extend to safeguarding the route of every journey the servant may be required to make in fetching and carrying, whether messages or portable articles." *Bridge Co. v. Bainum,* 146 F., 367.

4. The contention of the defendant on the issue of assumption of risk is that the condition complained of was one of the ordinary risks of an employee engaged in working around water tanks. This is well founded. Any man of ordinary intelligence is charged with knowledge of the fact that in extremely cold weather there is an accumulation of ice around water tanks, and plaintiff admitted that he was well aware of that condition.

Plaintiff testified that "you find water around the water tanks, but it is on account of the carelessness of the firemen you find it. I do not know about a plenty of it. I have been to tanks and found water around them, and that is a common thing, but it is not necessary that it should be there, but I have seen it there. In cold weather that water freezes like any other water. In weather as cold as this water that comes down out of the heavens freezes as soon as it hits the ground. I had just gotten to Cochran; had not been there over thirty minutes. I found ice there at that tank. I do not know that I found ice anywhere else that winter."

Railroad employees assume the risks incident to the falling of snow and forming of ice on and the removal of the same from the tracks and places where employees are required to work, if such removal is made in a proper and reasonable manner. Labatt (1st Ed.), page 604 (note).

The injury to the plaintiff was an accident, pure and simple, an unexpected result from a known cause, for which, in my opinion, the defendant is in no sense responsible.

MR. JUSTICE WALKER concurs in this opinion.